**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANICE PACK, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>LUXURBAN HOTELS INC., BRIAN FERDINAND, and SHANOOP KOTHARI,<br><br>     Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Janice Pack ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by LuxUrban Hotels Inc. ("LuxUrban" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by LuxUrban; and (c) review of other publicly available information concerning LuxUrban.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired LuxUrban securities between November 8, 2023 and February 2, 2024, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      LuxUrban utilizes an asset light business model to lease hotels on a long-term basis and rent hotel rooms in the properties it leases. The Company leases to business and vacation travelers through the Company's online portal and third-party sales and distribution channels, including several worldwide online travel agency (OTA) channels. The Company manages a portfolio of hotel rooms in New York, Washington D.C., Miami Beach, New Orleans, and Los Angeles.

3.      In November 2023, the Company announced it had signed a 25-year Master Lease Agreement ("MLA") with the prestigious Royalton Hotel, a four star hotel located at 44 West 44th Street, New York, New York.

1

4. On January 17, 2024, at approximately 12:00 PM EST, Bleeker Street Research published a report, which alleged that the Company had not actually signed a lease with the Royalton Hotel. The report started the owner of the Royalton hotel building confirmed LuxUrban never actually signed a lease, nor even provided a Letter of Credit. The report also alleged the Company was embroiled in a number of lawsuits that "allege LuxUrban failed to pay rent repeatedly," and "in the last six months has been sued by landlords at four of their properties for unpaid rent" but that LuxUrban had "never once disclosed the nature of these lawsuits."

5. On this news, the Company's stock price fell $0.58, or 12% to close at $4.32 on January 17, 2024, on unusually heavy trading volume. The stock price continued to fall an additional $0.42, or 10%, to close at $3.89 on January 18, 2024, on unusually heavy trading volume.

6. Then on February 2, 2024, after the market closed, LuxUrban announced the "termination of discussions to add the Royalton Hotel to its roster of properties" and that it was "withdrawing its prior statements regarding the Royalton" including prior quarterly reports which listed the Royalton under "Management's Discussion and Analysis of Financial Condition and Results of Operations—Property Summary—Properties under lease, not operating."

7. On this news, the Company's stock price fell $0.99, or 22%, to close at $3.50 per share on February 5, 2024, on unusually heavy trading volume.

8. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants misstated and/or failed to disclose to investors: (1) that the Company had not signed a lease with the Royalton Hotel; (2) that, as a result, LuxUrban's total reported units was overstated; (3) that LuxUrban faced multiple lawsuits for

unpaid rent; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis..

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

13.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

14.     Plaintiff Janice Pack, as set forth in the accompanying certification, incorporated by reference herein, purchased LuxUrban securities during the Class Period, and suffered damages

as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant LuxUrban is incorporated under the laws of Delaware with its principal executive offices located in Miami, Florida. LuxUrban's common stock trade on the NASDAQ exchange under the symbol "LUXH."

16.     Defendant Brian Ferdinand ("Ferdinand") was the Company's Chief Executive Officer ("CEO") at all relevant times.

17.     Defendant Shanoop Kothari ("Kothari") was the Company's Chief Financial Officer ("CFO") at all relevant times.

18.     Defendants Ferdinand and Kothari (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19.     LuxUrban utilizes an asset light business model to lease hotels on a long-term basis and rent hotel rooms in the properties it leases. The Company leases to business and vacation

travelers through the Company's online portal and third-party sales and distribution channels, including several worldwide online travel agency (OTA) channels. The Company manages a portfolio of hotel rooms in New York, Washington D.C., Miami Beach, New Orleans, and Los Angeles.

**Materially False and Misleading**

**<u>Statements Issued During the Class Period</u>**

20.     The Class Period begins on November 8, 2023. On that day, LuxUrban submitted its quarterly report for the period ended September 30, 2023 on a Form 10-Q filed with the SEC (the "3Q 10-Q") which listed 168 units of the Royalton Hotel located at 44 W 44th Street, New York, NY 10036 available under "Properties under lease, not operating," resulting in a total 2,032 units available. The 3Q 10-Q stated in relevant part the following descriptions regarding the Company's available units:[1]

Property Summary

We enter into triple net leases in which we are responsible for all of the costs on the property outside of exterior structural maintenance. ***As of September 30, 2023, we leased 16 properties with 1,446 units available for rent. As of November 8, 2023, we leased 18 properties with 1,599 units available for rent. As of November 8, 2023, including properties under lease but not yet available for rent we leased 21 properties with 2,032 units.***

\*          \*          \*

| | Properties under lease, not operating |
|---|---|
| **Trinity:** 741 8th 851 South Grand Avenue, Los Angeles, CA 90017 | 179 |
| **Royalton:** 44 W 44th Street, New York, NY 10036 | 168 |
| **3 Star:** West Midtown, New York, NY | 86 |
| **Under lease** | 2,032 |

(The relevant subset of the table is reproduced here.)

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

21.     The 3Q 10-Q contained the following disclosure which purported to describe the ongoing legal proceedings against it:

From time to time, the Company may be a party to certain legal proceedings, incidental to the normal course of our business. *We are not currently a party to any pending or threatened legal proceedings that we believe could have a material adverse effect on our business or financial condition*.

Although the Company does not expect, based on currently available information, that the outcome in any pending matters, individually or collectively, will have a material adverse effect on its financial position or results of operations, the ultimate outcome is inherently unpredictable. The Company regularly assesses all of its litigation and threatened litigation as to the probability of ultimately incurring a liability and records its best estimate of the ultimate loss in situations where it assesses the likelihood of loss as probable and estimable. In this regard, the Company establishes accrual estimates for its various lawsuits, claims, investigations and proceedings when it is probable that an asset has been impaired or a liability incurred at the date of the financial statements and the loss can be reasonably estimated. *As of September 30, 2023, we have $1.4 million accrued for legal matters. The Company believes the accrual best estimates the most likely outcomes of these matters, however the range of outcomes could be between $1,250,000 – $1,750,000.*

22.     On November 8, 2023, the Company announced its third quarter 2023 financial results in a press release which stated in relevant part:

Our collaboration with Wyndham Hotels & Resorts ("Wyndham") has placed us on an *accelerated glidepath for growth by allowing us to target and acquire the operating rights to a wider variety of hotels, including larger properties,* and generating efficiencies that enhance profitability. We have successfully onboarded the 17 initial properties under the Wyndham agreement and are in the process of integrating additional hotels to the Wyndham brand family and operating platform. We ended the quarter with 1,466 units available for rent. As of November 8, 2023, we had 1,599 units available for rent and *2,032 units under long-term Master Lease Agreements but not yet available for ren*t. Many of the new rooms being added to our portfolio are part of the 1,600 units associated with the previously announced addition of seven new 3-star and 4-star properties. Most of these new rooms are expected to begin welcoming guests by the end of the year with the balance expected to come online by early 2024. We expect further significant increases in our room portfolio to occur throughout 2024.

*               *               *

As of November 8, 2023, the Company:

- leased 18 properties with 1,599 units available for rent

- **_leased 21 properties with 2,032 units, including properties under lease but not yet available for rent_**

\*      \*      \*

**_As of November 8, 2023 the Company had 2,032 hotel rooms under lease_**, including properties not yet available for rent, and seeks to rapidly build its portfolio on favorable economics through the acquisition of additional accommodations that were dislocated or are underutilized as a result of the pandemic and current economic conditions.

23.     On this news, the Company's stock price rose $0.33, or 7.5% to close at $4.73 per share on November 9, 2023, on unusually heavy trading volume.

24.     On November 17, 2023, the Company issued a press release entitled "LuxUrban Hotels Announces Non-Dilutive Financing of Up to $10 Million to Accelerate Growth," which described, in relevant part:

> "In combination with proceeds generated from our recently closed offering of 13.00% Series A Cumulative Redeemable Preferred Stock and the ongoing support of Wyndham Hotels & Resorts, we believe that proceeds from the Note will accelerate our ability to build density in existing markets and enter new destination locations. I will continue to align my interests with those of the Company's shareholders and remain focused on delivering long-term shareholder value."

\*      \*      \*

> The Company currently manages a portfolio of hotel rooms in New York, Washington D.C., Miami Beach, New Orleans and Los Angeles. **_As of November 8, 2023, the Company had 2,032 hotel rooms under lease, including properties not yet available for rent,_** and seeks to rapidly build its portfolio on favorable economics through the acquisition of additional accommodations that were dislocated or are underutilized as a result of the pandemic and current economic conditions.

25.     On November 30, 2023, the Company issued a press release entitled "LuxUrban Hotels to Operate Two New Four-Star Boutique Hotels in New York City," which stated in relevant part:

*The Royalton Hotel and the Truss Hotel Times Square to Begin Welcoming Guests in December*

LuxUrban Hotels Inc. ("LuxUrban" or the "Company") (Nasdaq: LUXH), which utilizes an asset-light business model to lease entire hotels on a long-term basis and rent out hotel rooms in these properties in key major metropolitan cities, ***today announced that it has signed separate 25-year Master Lease Agreements (MLA), inclusive of two five-year options, to operate two new boutique hotels in New York City: The Royalton Hotel and the Truss Hotel.*** These properties will be re-branded as "The Royalton by LuxUrban" and "The Truss Hotel by LuxUrban" and are ***expected to begin welcoming guests early next month***.

\*       \*       \*

"These newest hotels add density to our primary market of New York City and increase our portfolio of properties that will be integrated into the LuxUrban operating platform," said Brian Ferdinand, Chairman and Co-Chief Executive Officer of LuxUrban Hotels. "We are continuing to manage a robust opportunity pipeline and expect to consummate several additional MLAs in the near term."

\*       \*       \*

***As of November 30, 2023 the Company had 2,032 hotel rooms under lease***, including properties not yet available for rent, and seeks to rapidly build its portfolio on favorable economics through the acquisition of additional accommodations that were dislocated or are underutilized as a result of the pandemic and current economic conditions.

26.     On January 12, 2024, the Company issued a press release entitled "***LuxUrban Hotels Announces that The Royalton by LuxUrban***, Trademark Collection® by Wyndham Will Begin Welcoming Guests in January," which stated in relevant part:

*The Royalton by LuxUrban, Trademark Collection® by Wyndham is expected to begin welcoming guests on or before January 30, 2024*.

The Company also announced that it has completed its 2024 Capital Plan. In combination with recent warrant proceeds of approximately $4 million, gross proceeds of approximately $7 million raised via the previously announced underwritten public offering of the Company's 13.00% Series A Cumulative Redeemable Preferred Stock, and an enhanced Key Money financing program with Wyndham Hotels & Resorts, the Company intends to accelerate growth by means of these initiatives. Although the Company will continue to evaluate market conditions and opportunities, it has no current plans for any additional equity or debt financings not previously disclosed.

The Company Is pursuing a robust opportunity pipeline and expects to imminently announce additional large-scale Master Lease Agreements (MLA) for hotel properties that are scheduled to open during the first quarter of 2024. The Company expects to have approximately 3,500-4,000 hotel rooms available for rent under long-term MLA by the end of the first quarter of 2024 and approximately 6,000 hotel rooms available for rent under MLA by June 30, 2024.

*      *      *

**As of November 30, 2023 the Company had 2,032 hotel rooms under lease,** including properties not yet available for rent, and seeks to rapidly build its portfolio on favorable economics through the acquisition of additional accommodations that were dislocated or are underutilized as a result of the pandemic and current economic conditions.

27.     The above statements identified in ¶¶ 20-22, 24-26 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company had not signed a lease with the Royalton Hotel; (2) that, as a result, LuxUrban's total reported units was overstated; (3) that LuxUrban faced multiple lawsuits for unpaid rent; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

28.     The truth began to emerge on January 17, 2024, at approximately 12:00 PM EST. On that date, Bleeker Street Research published a report entitled "LuxUrban Hotels (LUXH): The Bed Sheets Should Be Made Out Of Red Flags" (the "Report"). The Report revealed LuxUrban had ***not*** signed a lease with the Royalton Hotel, as confirmed by the building's owner and operator. The Report described that "LuxUrban's First Five-Star Hotel Deal Hasn't Closed, Despite Company Press Releases claiming otherwise" and "[t]he owner of that building [the Royalton Hotel] told us LuxUrban had not actually signed the lease." The Report stated:

> **We confirmed with the building's owners and operator that as of January 14, LuxUrban has not officially signed the lease on this property. While the company first listed The Royalton as "under lease" in the Q3, 2023 10-Q, the company has**

9

*yet to provide a Letter of Credit, several months after first engaging with the building owner.*

\*     \*     \*

*Several of the lawsuits mentioned above referenced similar behavior by LuxUrban.* We spoke with another hotel operator who personally knew of three different LuxUrban hotel deals that were announced before the deal had closed. In one instance, the hotel owner hadn't even spoken with LuxUrban, much less signed anything. Another announcement occurred on a hotel out of receivership, much to the receivers surprise.

29. The Report further revealed that the Company was embroiled in a number of lawsuits which alleged LuxUrban was repeatedly and consistently delinquent on rent, the nature of which the Company had never previously disclosed. The Report continued, describing how LuxUrban has been named in numerous lawsuits which allege the Company has repeatedly failed to pay rent- including that "LuxUrban, [ ] in the last six months has been **sued by landlords at four of their properties for unpaid rent**." The Report stated that these "Lawsuits against LuxUrban pose a real risk to LuxUrban's balance sheet and ability to hit 2024 guidance." The Report continued:

We have found **numerous lawsuits alleging that LuxUrban has not paid rent on its properties, leading to foreclosures and other issues**. Key vendors like security have gone unpaid, and we have discovered that recently announced key deals have not closed. Cumulatively, the outcome of these lawsuits could blow a hole in LuxUrban's already strained balance sheet.

\*     \*     \*

We reviewed dozens of lawsuits against LuxUrban and its affiliates and a clear pattern has emerged. Just in the last several months, LuxUrban has been hit with a number of additional lawsuits, any number of which could blow a hole in its balance sheet.

*We believe that LuxUrban's myriad legal issues have never been disclosed properly to investors.* Other than the below disclosure, LuxUrban has never once disclosed any of these lawsuits, despite many of them being clearly material to the LuxUrban's existence. The lack of disclosure of these key lawsuits, even when they threaten the company's ability to remain solvent, is a key red flag.

*      *      *

LuxUrban's own estimates show the company could be on the hook for $1.25M to $1.75M in damages from lawsuits. A close reading of all of these lawsuits reveals clear patterns. Many of these lawsuits allege that LuxUrban has failed to pay rent repeatedly, in one case the landlord alleges that LuxUrban never paid rent on time.

*      *      *

There are many lawsuits, and we have only provided a sample here.

| Property | # of Units | | DATE | Dollar Liability |
|---|---|---|---|---|
| Herald: 71 W 35th St, New York, NY 10001 | 168 | DEBT COLLECTION | 10/25/23 | $37,582.00 |
| 1200 O: 1200 Ocean Dr, Miami Beach, FL 33139 | 24 | EVICTION LAWSUIT | 5/5/23 | $137,584.00 |
| Townhouse: 150 20th Street, Miami Beach, FL 33139 | 70 | EVICTION LAWSUIT | 12/28/23 | $174,227.00 |
| O Hotel: 819 South Flower Street, Los Angeles, CA 90017 | 68 | DEBT/EVICTION | 10/13/23 | $330,000 |
| Astor: 956 Washington Ave, Miami Beach, FL 33139 | 42 | EVICTION LAWSUIT | 12/12/23 | $610,687.00 |

30.     On this news, the Company's stock price fell $0.58, or 12% to close at $4.32 per share on January 17, 2024, on unusually heavy trading volume. The stock price continued to fall $0.42, or 10%, to close at $3.89 per share on January 18, 2024, on unusually heavy trading volume.

31.     On January 17, 2024, the Company issued a press release entitled "LuxUrban Hotels Responds to Inaccurate and Misleading Short Seller Report" which stated in relevant part:

> While there are multiple inaccuracies contained in the report, the Company offers the below to address what it believes to be among the most glaring:
>
> - ***As previously announced, the Company is scheduled to begin welcoming guests on or before January 30, 2024 at The Royalton by LuxUrban, Trademark Collection® by Wyndham and has a set date with the property's ownership to be delivered possession of the asset.***
>
> - The Company prepares and files its periodic and current reports with the Securities and Exchange Commission ("SEC") in compliance with applicable law. ***Consistent with the Company's prior disclosures, all litigation involving the Company as of the date of this release is considered by the Company to be ordinary course and immaterial.***
>
> - ***All litigation risks & liabilities have been accrued for in the Company's financial statements and are primarily related to the Company's legacy apartment rental business.***

*      *      *

11

*As of November 30, 2023 the Company had 2,032 hotel rooms under lease,* including properties not yet available for rent, and seeks to rapidly build its portfolio on favorable economics through the acquisition of additional accommodations that were dislocated or are underutilized as a result of the pandemic and current economic conditions.

32.     The above statements identified in ¶31 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company had not signed a lease with the Royalton Hotel; (2) that, as a result, LuxUrban's total reported units was overstated; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

33.     Then on February 2, 2024, after the market closed, LuxUrban announced the "termination of discussions to add the Royalton Hotel to its roster of properties." As a result, the Company was "withdrawing its prior statements regarding the Royalton," including prior quarterly reports that listed the Royalton as a property under lease. Specifically, the Company stated:

In addition to the foregoing, *today the Company is announcing the termination of discussions to add the Royalton Hotel to its roster of properties*. The removal of the Royalton Hotel (the "Royalton") as a prospect for the Company is not expected to have a material impact on the company's ability to achieve its previously stated financial goals for the full year 2024.

*The Company filed its Quarterly Report on Form 10-Q for the three and nine months ended September 30, 2023 (the "10-Q").* Under "Item 2—Management's Discussion and Analysis of Financial Condition and Results of Operations—Property Summary—Properties under lease, not operating," *the Company included a reference to the Royalton. The Company made similar references to the Royalton expressing its belief that the Company had entered into a Master Lease agreement and was expecting the Royalton to begin operating as part of the Company's portfolio in subsequent press releases*.

*Today the Company is withdrawing its prior statements regarding the Royalton*. The parties began working toward a transaction in early fall 2023. *The Company*

*believed based on correspondence received that the material terms of the transaction was agreed to. In addition, there was a commitment by a qualified banking institution to fund the letter of credit required under the proposed lease in a form agreeable by the landlord; however, a complete set of definitive agreements relating to the lease were not, and will not be, entered into by the Company.*

In addition, based on the complexity and multi-step process of closing an MLA from lease execution, which was the previous policy for announcing acquisitions, on a go-forward basis the Company will only announce acquisitions when they are opened for hosting guests and have completed the entire MLA process.

34.     On this news, the Company's stock price fell $0.99, or 22%, to close at $3.50 per share on Monday, February 5, 2024, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired LuxUrban securities between November 8, 2023 and February 2, 2024, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

36.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, LuxUrban's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of LuxUrban shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by LuxUrban or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

39.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

        (a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

        (b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of LuxUrban; and

        (c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

41.     The market for LuxUrban's securities was open, well-developed, and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, LuxUrban's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired LuxUrban's securities relying upon the integrity of the market price of the Company's securities and market information relating to LuxUrban, and have been damaged thereby.

42.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of LuxUrban's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about LuxUrban's business, operations, and prospects as alleged herein.

43.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about LuxUrban's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

44.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

45.     During the Class Period, Plaintiff and the Class purchased LuxUrban's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

46.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding LuxUrban, their control over, and/or receipt and/or modification of LuxUrban's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning LuxUrban, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

47.     The market for LuxUrban's securities was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, LuxUrban's securities traded at artificially inflated prices during the Class Period.  On

January 8, 2024 the Company's stock price closed at a Class Period high of $6.61 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of LuxUrban's securities and market information relating to LuxUrban, and have been damaged thereby.

48.     During the Class Period, the artificial inflation of LuxUrban's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about LuxUrban's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of LuxUrban and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

49.     At all relevant times, the market for LuxUrban's securities was an efficient market for the following reasons, among others:

(a)     LuxUrban shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, LuxUrban filed periodic public reports with the SEC and/or the NASDAQ;

(c)     LuxUrban regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on

the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     LuxUrban was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

50.     As a result of the foregoing, the market for LuxUrban's securities promptly digested current information regarding LuxUrban from all publicly available sources and reflected such information in LuxUrban's share price. Under these circumstances, all purchasers of LuxUrban's securities during the Class Period suffered similar injury through their purchase of LuxUrban's securities at artificially inflated prices and a presumption of reliance applies.

51.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

52.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of LuxUrban who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

53.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase LuxUrban's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

55.   Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for LuxUrban's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

56.   Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about LuxUrban's financial well-being and prospects, as specified herein.

57.   Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of LuxUrban's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about LuxUrban and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

58.   Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management

team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

59.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing LuxUrban's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

60.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of LuxUrban's securities was artificially inflated during the Class Period.  In ignorance of the fact

that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired LuxUrban's securities during the Class Period at artificially high prices and were damaged thereby.

61.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that LuxUrban was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their LuxUrban securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

62.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

64.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

65.     Individual Defendants acted as controlling persons of LuxUrban within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

67.     As set forth above, LuxUrban and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)      Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)      Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:   February 12, 2024

*/s/ Gregory B. Linkh*

**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh (GL-0477)
Rebecca Dawson
230 Park Ave, Suite 358
New York, New York 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com
       rdawson@glancylaw.com


Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160


**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Counsel for Plaintiff Janice Pack*

**SWORN CERTIFICATION OF PLAINTIFF**

**LUXURBAN HOTELS INC. SECURITIES LITIGATION**

I, Janice Pack, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the LuxUrban Hotels Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in LuxUrban Hotels Inc. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

| 2/11/2024 | JANICE PACK |
|---|---|
| Date | Janice Pack |

**Janice Pack's Transactions in LuxUrban Hotels Inc. (LUXH)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 1/10/2024 | Bought | 50 | $6.3700 |