UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANICE PACK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LUXURBAN HOTELS INC., BRIAN FERDINAND, and SHANOOP KOTHARI,<br><br>Defendants. | Case No.  1:24-cv-01030-PAE |

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION
OF ZCAP EQUITY FUND LLC AND ROSS MARCHETTA FOR APPOINTMENT
AS CO-LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL; AND
(2) IN OPPOSITION TO COMPETING MOTIONS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 5

    I.     THE COURT SHOULD APPOINT THE FUND AND MARCHETTA AS
           CO-LEAD PLAINTIFFS .................................................................................. 5

          A.     The Fund and Marchetta Have the Largest Financial Interest of Any
                Competing Movant ................................................................................. 6

          B.     The Fund and Marchetta Satisfy the Applicable Requirements of
                Rule 23 .................................................................................................. 7

    II.    CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE
           APPROVED ..................................................................................................... 12

    III.   THE LUXURBAN INVESTOR GROUP'S COMPETING MOTION
           SHOULD BE DENIED ................................................................................... 13

CONCLUSION ...................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*,
   17-CV-10085, 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ...........................................5, 8, 12

*Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*,
   289 F.3d 589 (9th Cir. 2002) ......................................................................................12

*Barnet v. Elan Corp., PLC*,
   236 F.R.D. 158 (S.D.N.Y. 2005) ...............................................................................4, 5, 9, 11

*Chahal v. Credit Suisse Grp. AG*,
   Nos. 18-CV-2268 *et al.*, 2018 WL 3093965 (S.D.N.Y. June 21, 2018)...............................2, 6

*China Agritech, Inc. v. Resh*,
   584 U.S. 732 (2018).....................................................................................................4, 9

*Dookeran v. Xunlei Ltd.*,
   Nos. 18-cv-467 (RJS) *et al.*, 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018).........................3, 8

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005).....................................................................................................1, 2, 3, 7

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) ................................................................................ *passim*

*Hodges v. Akeena Solar, Inc.*,
   263 F.R.D. 528 (N.D. Cal. 2009)...............................................................................11

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
   No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017)....................4, 9

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)........................................................................................9

*In re Mersho*,
   6 F.4th 891 (9th Cir. 2021) .........................................................................................9

*In re Molson Coors Brewing Co. Sec. Litig.*,
   233 F.R.D. 147 (D. Del. 2005) ...................................................................................12

*In re Orion Sec. Litig.*,
   No. 08 CIV. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) ...............................3, 8

*Janbay v. Canadian Solar, Inc.*,
 272 F.R.D. 112 (S.D.N.Y. 2010) ...............................................................................3, 8

*Juliar v. Sunopta Inc.*,
 Nos. 08 CIV. 1070 (PAC) *et al.*, 2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ......................9

*Kaplan v. Gelfond*,
 240 F.R.D. 88 (S.D.N.Y. 2007) ...........................................................................5, 8, 12

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
 311 F.R.D. 373 (S.D.N.Y. 2015) ..............................................................................12

*Lax v. First Merchants Acceptance Corp.*,
 Nos. 97 C 2715 *et al.*, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ................................2, 3, 6

*Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
 No. 2:11-CV-289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012) ...............................................10

*Peters v. Jinkosolar Holding Co.*,
 No. 11 CIV. 7133 JPO, 2012 WL 946875 (S.D.N.Y. Mar. 19, 2012)................................5, 11

*Reimer v. Ambac Financial Group, Inc.*,
 Nos. 08 Civ. 411(NRB) *et al.*, 2008 WL 2073931 (S.D.N.Y. May 9, 2008) ..........................9

*Sabbagh v. Cell Therapeutics, Inc.*,
 No. C10-414MJP, 2010 WL 3064427 (W.D. Wash. Aug. 2, 2010)........................................11

*Turpel v. Canopy Growth Corp.*,
 No. 23 CIV. 4302 (PAE), 2023 WL 8276633 (S.D.N.Y. Nov. 30, 2023)................................1

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
 No. CIV.A. 13-6731, 2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) ....................................5, 9

*Weltz v. Lee*,
 199 F.R.D. 129 (S.D.N.Y. 2001) .................................................................................4, 9

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ................................................................. *passim*

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... *passim*

iii

Lead Plaintiff Movants the Fund and Marchetta[1] respectfully submit this memorandum of law in further support of their motion for appointment as Co-Lead Plaintiffs and approval of their selection of Pomerantz as Lead Counsel (Dkt. No. 17); and in opposition to the competing motion of Joshua Leckner, Evan Weiser, and Matthew Halpern (collectively, the "LuxUrban Investor Group") (Dkt. No. 14).

## PRELIMINARY STATEMENT

This Action is a putative class action securities fraud lawsuit on behalf of investors in LuxUrban securities. As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as lead plaintiff the movant or group of movants with the greatest financial interest in the outcome of the Action; and that satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, those movants are the Fund and Marchetta, who incurred a collective loss of approximately $17,406 calculated on a FIFO basis, or $17,219 calculated on a LIFO basis, in connection with their Class Period transactions in LuxUrban securities. *See* Dkt. No. 20-1. Moreover, calculated consistently with the loss-causation principles articulated in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), and its progeny, the Fund and Marchetta incurred a recoverable loss of approximately $24,439 in connection with their Class Period purchases of LuxUrban securities.[2] *See* Dkt. No. 20-1. Although the PSLRA does not define

---

[1] All capitalized terms herein are defined in the Fund and Marchetta's moving brief (Dkt. No. 19), unless otherwise indicated.

[2] As noted in their moving brief (*see* Dkt. No. 19 at 2 n.1), the Fund and Marchetta have calculated their *Dura* losses in accordance with the methodology articulated by this Court in its recent decision *Turpel v. Canopy Growth Corp.*, No. 23 CIV. 4302 (PAE), 2023 WL 8276633, at *4-9 (S.D.N.Y. Nov. 30, 2023).

1

"financial interest," courts in the Second Circuit, including this District, routinely assess the financial interest of lead plaintiff movants by examining the so-called *Lax* factors, first articulated in the seminal decision in *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  Nos. 97 C 2715 *et al.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997); *see Chahal v. Credit Suisse Grp. AG*, Nos. 18-CV-2268 *et al.*, 2018 WL 3093965, at *1 (S.D.N.Y. June 21, 2018); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127-28 (S.D.N.Y. 2011).  Of the *Lax* factors, courts in the Second Circuit, including this District specifically, recognize that the amount of financial loss is the most significant factor to be considered.  *See, e.g.*, *Chahal*, 2018 WL 3093965, at *1; *Foley*, 272 F.R.D. at 128.  The table below sets forth the respective financial interests of the competing movants:

| Movant | Shares Purchased | Shares Retained | Funds Expended | FIFO Loss | LIFO Loss | *Dura* Loss |
|---|---|---|---|---|---|---|
| The Fund and Marchetta | 8,000 | 8,000 | $37,179 | $17,406 | $17,219 | $24,439 |
| The LuxUrban Investor Group | 2,367 | 2,367 | $11,309 | $5,642[3] | $5,642 | $5,311 |

As the above table reflects, the Fund and Marchetta's collective loss is ***more than three times larger*** than that incurred by the LuxUrban Investor Group ($5,642 calculated on either a FIFO or LIFO basis), the only competing movant, regardless of whether the Fund and Marchetta's

---

[3] Although the LuxUrban Investor Group did not provide their loss as calculated on a FIFO or LIFO basis, for comparative purposes, the Fund and Marchetta have calculated the LuxUrban Investor Group's FIFO and LIFO loss consistent with the same methodology used by the Fund and Marchetta in calculating their own FIFO and LIFO loss.

loss is calculated on a FIFO ($17,406) or LIFO ($17,219) basis.  Moreover, the Fund and Marchetta's collective recoverable loss ($24,439), calculated consistently with the loss-causation principles articulated in *Dura* and its progeny, is ***more than four times larger*** than the recoverable *Dura* loss that the LuxUrban Investor Group claims to have collectively incurred ($5,311).  The Fund and Marchetta also lead with respect to every other *Lax* factor, having purchased more shares (8,000), retained more shares (8,000), and expended more funds ($37,179) than the LuxUrban Investor Group.  Accordingly, among the competing movants, the Fund and Marchetta clearly possess the greatest financial interest in the outcome of this litigation under any relevant metric, thus satisfying the first of the PSLRA's statutory criteria for appointment as lead plaintiff.

In addition to their significant financial interest in this Action, the Fund and Marchetta also strongly satisfy Rule 23's typicality and adequacy requirements.  The Fund and Marchetta's claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.  *See  In re Orion Sec. Litig.*, No. 08 CIV. 1328 (RJS), 2008 WL 2811358, at \*5 (S.D.N.Y. July 8, 2008); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010).  In addition, the Fund and Marchetta's significant financial interest gives them a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, they are aware of no conflict between their interests and those of the Class, and, as discussed in greater detail below, they have selected counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel for the Class. *Foley*, 272 F.R.D. at 131; *Dookeran v. Xunlei Ltd.*, Nos. 18-cv-467 (RJS) *et al.*, 2018 WL 1779348, at \*2-3 (S.D.N.Y. Apr. 12, 2018).

Moreover, as a small and cohesive duo of likeminded investors, the Fund and Marchetta, both of which incurred significant losses in connection with the alleged fraud, constitute exactly

3

the kind of small and cohesive group that the PSLRA expressly permits and courts in the Second Circuit, including this District specifically, routinely appoint to serve as lead plaintiffs in securities class actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) ("[T]he most adequate plaintiff . . . is the person ***or group*** of persons that . . . has the largest financial interest in the relief sought by the class." (Emphasis added.)); *China Agritech, Inc. v. Resh*, 584 U.S. 732, 742 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups[.]"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiffs); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding group of seven was "presumptively the most adequate plaintiff").

Further evidencing their adequacy, the Fund and Marchetta have submitted with their motion papers a detailed Joint Declaration, attesting to, *inter alia*, their respective backgrounds— including the background of the Fund's Chief Investment Officer ("CIO"), Noah R. Robins ("Robins"), who is authorized to bind the Fund in connection with this litigation and will be the main contact for the Fund in this litigation—their understanding of this litigation generally and the significance of their motion specifically, their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, a meaningful explanation of their reasons for seeking appointment jointly as Co-Lead Plaintiffs, their communications with each other prior to the filing of their motion, and their readiness to collaboratively shoulder the responsibilities of lead plaintiffs under the PSLRA, including by overseeing the efforts of counsel. *See generally* Dkt. No. 20-3. Courts routinely appoint more than one investor as co-lead plaintiffs under such circumstances. *See, e.g.*, *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL

4

6403513, at *4 (E.D.N.Y. Dec. 15, 2017); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CIV.A. 13-6731, 2014 WL 1395059, at *7-9, *12 (E.D. Pa. Apr. 10, 2014).  This is especially true where, as here, a member of the group—the Fund—individually incurred a larger loss than any competing movant—here, the LuxUrban Investor Group—thereby obviating any concern that the group aggregated their losses purely to meet the PSLRA's "largest financial interest" criterion.  *See, e.g.*, *Peters v. Jinkosolar Holding Co.*, No. 11 CIV. 7133 JPO, 2012 WL 946875, at *9 (S.D.N.Y. Mar. 19, 2012); *Barnet*, 236 F.R.D. at 161-63.

Accordingly, for the reasons set forth herein, the Fund and Marchetta respectfully submit that the Court should grant their motion in its entirety and deny the competing motion of the LuxUrban Investor Group.

## ARGUMENT

### I. THE COURT SHOULD APPOINT THE FUND AND MARCHETTA AS CO-LEAD PLAINTIFFS

The PSLRA creates a strong presumption that the lead plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest must only make a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  *See Aude v. Kobe Steel, Ltd.*, 17-CV-10085, 2018 WL 1634872, at *3-4 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).  Once this presumption is triggered, it may be rebutted only upon "proof" that the presumptive lead plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Here, the most adequate class representatives are the Fund and Marchetta.

A.      **The Fund and Marchetta Have the Largest Financial Interest of Any Competing Movant**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." *Id.* § 78u-4(a)(3)(B)(iii).  The PSLRA does not prescribe a particular method of calculating the size of a movant's financial interest in the relief sought by the class.  *See id.* § 78u-4(a)(3)(B)(iii)(I)(bb).  However, courts in the Second Circuit, including this District, routinely assess the financial interest of lead plaintiff movants by examining the four *Lax* factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  *Lax*, 1997 WL 461036, at *5; *see Chahal*, 2018 WL 3093965, at *1 ("In deciding which proposed lead plaintiff has 'the largest financial interest in the relief sought by the class,' courts in this district tend to consider four criteria, known as the *Lax* factors[.]"); *Foley*, 272 F.R.D. at 127–28 ("[C]ourts in this Circuit have applied a four factor test first set forth in *Lax*[.]").  Of the *Lax* factors, courts in the Second Circuit, including this District specifically, recognize that the amount of financial loss is the most significant factor to be considered.  *See, e.g.*, *Chahal*, 2018 WL 3093965, at *1 ("Courts generally find the fourth factor [*i.e.*, loss] to be the most compelling."); *Foley*, 272 F.R.D. at 128 ("Although courts have differed on how much weight to assign to each of the *Lax* factors, we, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant.").

Under the foregoing analysis, the Fund and Marchetta have a larger financial interest in this Action than the LuxUrban Investor Group, the only competing movant seeking appointment as lead plaintiff in this Action.  As the chart at p. 2 reflects, the Fund and Marchetta incurred a collective loss of approximately $17,406 calculated on a FIFO basis, or $17,219 calculated on a

6

LIFO basis, as a result of the fraud alleged in this Action.  *See* Dkt. No. 20-1.  These losses are *more than three times larger* than the LuxUrban Investor Group's collective $5,642 loss as calculated on either a FIFO or LIFO basis.  Moreover, the Fund and Marchetta's collective recoverable loss of $24,439 (*see id.*), calculated consistently with the loss-causation principles articulated in *Dura* and its progeny, is *more than four times larger* than the $5,311 recoverable *Dura* loss that the LuxUrban Investor Group claims to have collectively incurred.  Indeed, the Fund *alone* incurred a significant loss of approximately $11,176 calculated on a FIFO basis, or $10,989 calculated on a LIFO basis, as well as a recoverable *Dura* loss of approximately $19,230.  *See id.*  Accordingly, the Fund *alone* incurred a loss *nearly twice as large* as that *collectively* incurred by the LuxUrban Investor Group, whether calculated on a FIFO or LIFO basis, as well as incurred a recoverable *Dura* loss *more than three times larger* than that collectively claimed by the LuxUrban Investor Group.

Further, the Fund and Marchetta claim a larger financial interest than the LuxUrban Investor Group with respect to *all Lax* factors, not merely monetary loss.  The Fund and Marchetta collectively purchased 8,000 LuxUrban shares during the Class Period, expended $37,179 on their purchases of LuxUrban securities during the Class Period, and retained 8,000 of their LuxUrban shares at the end of the Class Period, far more than the collective shares purchased, amount expended, and shares retained by the LuxUrban Investor Group during the Class Period.  *See id.* Accordingly, *every Lax* factor demonstrates that the Fund and Marchetta have the largest financial interest in this litigation.

B.      **The Fund and Marchetta Satisfy the Applicable Requirements of Rule 23**

In addition to possessing the greatest financial interest in the outcome of this litigation— and thus being the statutorily presumed "most adequate plaintiff" (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb))—the Fund and Marchetta have plainly made the requisite *prima facie*

7

showing that they satisfy the typicality and adequacy requirements of Rule 23. *Aude*, 2018 WL 1634872, at *3; *Kaplan*, 240 F.R.D. at 94 ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required.").

First, the Fund and Marchetta's claims in this litigation satisfy the typicality requirement of Rule 23(a)(3) because their claims are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See Orion*, 2008 WL 2811358, at *5; *Janbay*, 272 F.R.D. at 120. The Fund and Marchetta, like other Class members, purchased LuxUrban securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosures of those misrepresentations and/or omissions that drove LuxUrban's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23. *See Orion*, 2008 WL 2811358, at *5; *Janbay*, 272 F.R.D. at 120.

Second, the Fund and Marchetta satisfy the adequacy requirement of Rule 23(a)(4) because their significant financial interest gives them a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, they are aware of no conflict between their interests and those of the Class, and, as discussed in greater detail below, they have selected and retained counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel for the Class. *Foley*, 272 F.R.D. at 131; *Dookeran*, 2018 WL 1779348, at *2-3.

In addition, the Fund and Marchetta are a small and cohesive duo of likeminded investors. They therefore constitute an appropriate movant group of the type expressly permitted by the PSLRA and routinely appointed to serve as lead plaintiffs in PSLRA actions, including cases in

the Second Circuit, this District specifically, and around the country. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii) ("[T]he most adequate plaintiff . . . is the person *or group* of persons that . . . has the largest financial interest in the relief sought by the class." (Emphasis added.)); *Weltz*, 199 F.R.D. at 133 ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding group of seven was "presumptively the most adequate plaintiff"); *Barnet*, 236 F.R.D. at 161-63 (holding "there can be no doubt" the PSLRA permits appointment of groups, finding "that six members is not too unwieldy a number to effectively manage the litigation", and appointing group of six as lead plaintiffs); *Juliar*, 2009 WL 1955237, at *1-2 (appointing lead plaintiff movant group of two investors); *Reimer*, 2008 WL 2073931, at *3-4 (appointing lead plaintiff movant group of three investors); *Blue Apron*, 2017 WL 6403513, at *4 (appointing group of four unrelated investors as lead plaintiff); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff." (citation omitted)). Indeed, in *China Agritech*, the Supreme Court affirmed the propriety of appointing such groups as lead plaintiff, finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups". 584 U.S. at 742 n.3. More recently, in *In re Mersho*, the Ninth Circuit Court of Appeals likewise held that "the [PSLRA] expressly allows a 'group of persons' to move for appointment" as lead plaintiff. 6 F.4th 891, 899 (9th Cir. 2021).

Moreover, courts in the Second Circuit and around the country routinely find movant groups to be adequate where, as here, they have robustly demonstrated their cohesiveness via a detailed Joint Declaration. *See, e.g.*, *Blue Apron*, 2017 WL 6403513, at *4 (appointing group of four unrelated investors that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding the group is not "so large as to be unwieldly and impracticable"); *DFC*, 2014 WL 1395059, at *7-9, *12 (appointing group and noting

9

"declaration lay[ing] out the duties and obligations of" the group's members); *Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2012 WL 12985571, at *3 (D. Vt. Apr. 27, 2012) (finding joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").  Here, the Fund and Marchetta have submitted a detailed Joint Declaration—executed by Robins, CIO of the Fund, and Marchetta—in which they:

- Provide detailed information about themselves, as well as Robins, including Robins' and Marchetta's respective ages, investment experience, cities and state of residence in Miami and Miami Beach, Florida, and collective professional and educational backgrounds, as well as the background of the Fund, including, *inter alia*, where the Fund is headquartered and incorporated, how long the Fund has been in operation for, and the Fund's own investment experience (*see* Dkt. No. 20-3 ¶¶ 2-3);

- Explain their reasons for seeking appointment jointly as Co-Lead Plaintiffs (*id.* ¶ 9) ("We each determined that we could *maximize the Class's recovery by pooling our respective resources and experience* by jointly seeking appointment as Co-Lead Plaintiffs. After reviewing the allegations pleaded in the complaint, and consulting with each other and our counsel, we each independently determined to seek joint appointment as Co-Lead Plaintiffs, and subsequently approved the filing of a joint motion seeking our appointment as Co-Lead Plaintiffs. We agree that *our collective resources and our ability to engage in joint decision-making will materially benefit and advance the interests of the Class* in this case." (Emphases added.));

- Attest in detail to their understanding of the responsibilities of a lead plaintiff appointed pursuant to the PSLRA and their readiness to undertake those responsibilities (*id.* ¶¶ 4-7, 12-13); and

- Attest to their communications with one another prior to the filing of their motion (*id.* ¶ 4) ("We have discussed this case *with each other* and our counsel . . . . We attended a conference call *with each other* and our counsel to discuss this litigation, have one another's contact information, and approved the filing of a motion on our behalf seeking appointment jointly as Co-Lead Plaintiffs." (Emphases added.)).

In addition, the appointment of investor groups as co-lead plaintiffs is particularly appropriate where, as here, a member of the group—the Fund—individually incurred a larger loss than the other competing movants—here, the LuxUrban Investor Group—thereby obviating any concern that the group aggregated their losses purely to meet the PSLRA's "largest financial

10

interest" criterion. *See, e.g.*, *Peters*, 2012 WL 946875, at *9 (appointing group of four investors "where the group comprises the class members with, far and away, the largest financial interest of any individual or group"); *Barnet*, 236 F.R.D. at 162 ("Neither is there any evidence that the [movant g]roup was formed in bad faith. Indeed, even were the Court to deconstruct the Group, two of its individual members would still have the 'largest financial interest' pursuant to 15 U.S.C. § 78u–4(a)(3)(B)(iii)."); *Sabbagh v. Cell Therapeutics, Inc.*, No. C10-414MJP, 2010 WL 3064427, at *7 (W.D. Wash. Aug. 2, 2010) ("The Court's confidence . . . is further bolstered by the fact that it does not appear that this group was assembled merely for the purpose of aggregating their losses in order to surpass the financial interests of any of the other applicants. In actuality, two of the members . . . have *individual losses* . . . which exceed the financial interests of all other applicants[.]" (Emphasis in original.)); *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 533 (N.D. Cal. 2009) ("[I]t is not necessary for the members of the [movant group] to aggregate themselves in order to overcome the largest stake requirement—one of its members could meet that requirement by herself.").

In stark contrast to the Fund and Marchetta's robust *prima facie* showing of typicality and adequacy, the dearth of evidence provided by the LuxUrban Investor Group's members regarding themselves makes it difficult, if not impossible, to reliably assess their adequacy under Rule 23 for purposes of their appointment as Lead Plaintiffs under the PSLRA. The sparse information that the LuxUrban Investor Group *did* provide about its members—namely, that they attended university together and are friends, as well their respective professions and cities and states of residence—is provided only by way of their counsel's brief rather than by way of declarations. *See* Dkt. No. 15 at 1 n.1, 7-8. Respectfully, the LuxUrban Investor Group's counsel is not competent to testify concerning this information, which should be supported by sworn declarations

11

from the LuxUrban Investor Group's members. *See, e.g.*, *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) (finding arguments and statements of counsel are not evidence).

Accordingly, for all the foregoing reasons, the Fund and Marchetta have plainly made a *prima facie* showing that they satisfy the typicality and adequacy requirements of Rule 23. *Aude*, 2018 WL 1634872, at *3; *Kaplan*, 240 F.R.D. at 94.

\* \* \* \*

Because the Fund and Marchetta have the largest financial interest in the relief sought by the Class and otherwise satisfy the applicable requirements of Rule 23, they are the presumptive "most adequate" plaintiffs of the Class within the meaning of the PSLRA. To overcome the strong presumption entitling the Fund and Marchetta to appointment as Co-Lead Plaintiffs, the PSLRA requires *"**proof**"* that they are inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any arguments to the contrary should be flatly rejected.

## II.     CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in lead plaintiffs to select and retain lead counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with lead plaintiffs' choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, the Fund and Marchetta have selected and retained Pomerantz as Lead Counsel for the Class.  As its resume reflects, Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors.  *See* Dkt. No. 20-4.  Thus, the Court may be assured that by approving the Fund and Marchetta's selection of counsel, the members of the Class will receive the best legal representation available.

III.    **THE LUXURBAN INVESTOR GROUP'S COMPETING MOTION SHOULD BE DENIED**

As discussed further in Section I.A., *supra*, no competing movant has alleged a larger financial interest in this litigation than the Fund and Marchetta.  The only competing movant for appointment as Lead Plaintiff is the LuxUrban Investor Group, whose collective losses, funds expended, and number of shares purchased and retained during the Class Period are dwarfed by those claimed by the Fund and Marchetta, as illustrated by the chart at p. 2.  The Fund and Marchetta therefore dominate ***all four*** *Lax* factors.  Accordingly, the Fund and Marchetta have the largest financial interest in this litigation.  This fact alone mandates denial of the LuxUrban Investor Group's competing motion.

**CONCLUSION**

For the foregoing reasons, the Fund and Marchetta respectfully request that the Court issue an Order: (1) appointing the Fund and Marchetta as Co-Lead Plaintiffs for the Class; and (2) approving Pomerantz as Lead Counsel for the Class.

Dated:  April 26, 2024                              Respectfully submitted,

                                                                POMERANTZ LLP

                                                                */s/ Jeremy A. Lieberman*
                                                                Jeremy A. Lieberman
                                                                J. Alexander Hood II
                                                                James M. LoPiano

13

600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for zCap Equity Fund LLC and
Ross Marchetta and Proposed Lead Counsel
for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for zCap Equity Fund
LLC and Ross Marchetta*

14