UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANICE PACK, *individually and on behalf of all others similarly situated*,

Plaintiff,

-v-

LUXURBAN HOTELS INC., BRIAN FERDINAND, *and* SHANOOP KOTHARI,

Defendants.

---

24 Civ. 1030 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision appoints lead plaintiff and counsel in a putative securities class action. Plaintiff Janice Pack ("Pack") filed this action under the federal securities laws on behalf of all persons and entities that purchased or otherwise acquired LuxUrban Hotels Inc. ("LuxUrban") securities between November 8, 2023 and February 2, 2024, inclusive (the "class period"). Pack alleges that defendants—LuxUrban and two of its executives—falsely claimed to have signed a lease with a prestigious Manhattan hotel, only to disclose months later that there was no such lease. Pack further alleges that defendants failed to disclose several lawsuits that had been filed against LuxUrban. As a result of these misrepresentations, Pack alleges, she and other members of the putative class purchased LuxUrban securities at artificially inflated prices and incurred significant losses after the truth was revealed.

Two groups filed lead plaintiff motions in this action: the LuxUrban Investor Group and the zCap/Marchetta Group. For the following reasons, the Court appoints the zCap/Marchetta Group as lead plaintiff and appoints Pomerantz LLP as lead counsel.

## I.      Background

### A.      Factual Background

LuxUrban leases entire hotels on a long-term basis, and then rents rooms in those hotels to business and vacation travelers on a short-term basis—a business model that has been described as "WeWork for hotels." Dkt. 1 ("Compl.") ¶ 2.  It is incorporated in Delaware and based in Florida. *Id.* ¶ 15.  Its common stock trades on the NASDAQ exchange under the ticker "LUXH." *Id.*

On February 12, 2024, Pack filed a Complaint in this Court on behalf of a putative class of stockholders, to wit, "persons and entities that purchased or otherwise acquired LuxUrban securities between November 8, 2023 and February 2, 2024, inclusive." *Id.* ¶ 1.  Pack alleges that LuxUrban, its chief executive officer, Brian Ferdinand, and its chief financial officer, Shanoop Kothari, misled the market about LuxUrban's business, operations, and prospects.

Pack alleges these misrepresentations concerned two topics, and that each was first made on November 8, 2023, in the Form 10-Q report that LuxUrban filed for the quarter ending September 30, 2023 (the "3Q 10-Q").  First, Pack alleges, the 3Q 10-Q falsely included the Royalton Hotel, located in midtown Manhattan, as a property within LuxUrban's portfolio. *Id.* ¶ 20 (alleging that the 3Q 10-Q listed the Royalton Hotel's 168 units as part of LuxUrban's "[p]roperties under lease").  Second, Pack alleges, the 3Q 10-Q falsely stated that LuxUrban is "not currently a party to any pending or threatened legal proceedings that we believe could have a material adverse effect on our business or financial condition." *Id.* ¶ 21.  Pack alleges that LuxUrban repeated the first misrepresentation during the following months, in press releases that described LuxUrban's "accelerated glidepath for growth," *id.* ¶ 22, and stated that it had 2,032 units available for lease, *id.* ¶¶ 24–26.

Pack alleges that the truth was partially disclosed on January 17, 2024, when a third party, Bleeker Street Research, published a report titled, "LuxUrban Hotels (LUXH): The Bed Sheets Should Be Made Out Of Red Flags" (the "Report"). *Id.* ¶ 28. The Report revealed that LuxUrban had not signed a lease with the Royalton Hotel, *id.*, and was embroiled in multiple lawsuits that posed a risk to its balance sheet, *id.* ¶ 29. That same day, LuxUrban issued a press release terming the Report "misleading" and "inaccurate," reiterating to shareholders that LuxUrban "is scheduled to begin welcoming guests" to the Royalton "on or before January 30, 2024," and declaring that "[a]ll litigation risks & liabilities have been accrued for" in its financial statements. *Id.* ¶ 31. In the wake of the Report's publication and LuxUrban's press release, LuxUrban's stock price fell $0.58, or 12%, closing at $4.32 per share. *Id.* ¶ 30. The next day, LuxUrban's stock price fell another $0.42, or 10%, closing at $3.89 per share. *Id.*

Pack alleges that the truth fully emerged on Friday, February 2, 2024, when LuxUrban announced, after the close of trading, that it was terminating discussions "to add the Royalton Hotel to its roster of properties," and withdrawing its earlier statements about the Royalton. *Id.* ¶ 33. When trading opened on Monday, February 5, 2024, LuxUrban's stock price fell $0.99, or 22%, closing at $3.50 per share. *Id.* ¶ 34.

In sum, Pack alleges that LuxUrban and the individual defendants made materially false and misleading statements and failed to disclose material adverse facts about LuxUrban's business, operations, and prospects, causing LuxUrban's shares to be overvalued. Pack claims violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* ("Exchange Act"), and Rule 10b-5.

### B.    Procedural History

On February 12, 2024, the same day Pack filed the Complaint, her counsel, Glancy

Prongay & Murray LLP, published a notice of this action on *Business Wire*, *see* Dkt. 6, Ex. A, a

"widely circulated national business-oriented publication or wire service," 15 U.S.C. § 78u-

4(a)(3)(A)(i); *see Li Hong Cheng v. Canada Goose Holdings Inc.*, No. 19 Civ. 8204 (VSB), 2019

WL 6617981, at *4 (S.D.N.Y. Dec. 5, 2019).

On April 12, 2024, two groups moved for appointment as lead plaintiff: the LuxUrban

Investor Group, Dkt. 15 ("LuxUrban Investor Group Br."), and the zCap/Marchetta Group, Dkt.

19 ("zCap/Marchetta Br."). The LuxUrban Investor Group is composed of three individuals—

Joshua Leckner, Evan Weiser, and Matthew Halpern—who attended Towson University "and

have been friends since." LuxUrban Investor Group Br. at 1 & n.1. The zCap/Marchetta Group

is composed of one institutional investor (zCap Equity Fund LLC or simply "zCap") and one

individual (Ross Marchetta). zCap/Marchetta Br. at 1. zCap's Chief Investment Officer is Noah

R. Robins, who, like Marchetta, is based in Miami Beach, Florida. Dkt. 20, Ex. 3 ¶¶ 2–3. On

April 26, 2024, both groups filed reply briefs. Dkts. 22 ("LuxUrban Investor Group Reply Br."),

23 ("zCap/Marchetta Reply Br."). On May 3, 2024, responding to arguments made for the first

time in the LuxUrban Investor Group's reply brief, the zCap/Marchetta Group filed a surreply

brief, Dkt. 24, Ex. 1 ("zCap/Marchetta Group Surreply Br."), which the Court accepted, Dkt. 25.

## II.    Selecting the Lead Plaintiff: The PSLRA Requirements

The Private Securities Litigation Reform Act ("PSLRA") governs motions for

appointment of lead plaintiff and approval of lead counsel in putative class actions brought under

federal securities laws. The PSLRA directs the Court to appoint as lead plaintiff the party or

parties "most capable of adequately representing the interests of class members."  15 U.S.C. §

78u-4(a)(3)(B)(i).

Under the PSLRA, there is a rebuttable presumption that the most adequate plaintiff is

the person who: (1) either "filed the complaint" or "made a motion in response to a notice," *id.* §

78u-4(a)(3)(B)(iii)(I)(aa); (2) in the determination of the Court, has the "largest financial interest

in the relief sought by the class," *id.* § 78u-4(a)(3)(B)(iii)(I)(bb); and (3) "satisfies the

requirements of Rule 23 of the Federal Rules of Civil Procedure," *id.* § 78u-4(a)(3)(B)(iii)(I)(cc).

### A.     Notice

Both the LuxUrban Investor Group and the zCap/Marchetta Group satisfy the first

requirement, as each timely submitted a motion to become lead plaintiff in response to a notice.

*Id.* § 78u-4(a)(3)(B)(iii)(I)(aa); *see also City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs.*

*Grp., Inc.*, 269 F.R.D. 291, 293 (S.D.N.Y. 2010).

### B.     Financial Interest

In determining who has the largest financial stake in the litigation, courts in this Circuit

have traditionally applied a four-factor test, first set forth in *Lax v. First Merchants Acceptance*

*Corp.*, No. 97 Civ. 2715 (DHC), 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).  The *Lax*

factors are:

> (1) the total number of shares purchased during the class period;
>
> (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);
>
> (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and
>
> (4) the approximate losses suffered.

*City of Monroe Emps.' Ret. Sys.*, 269 F.R.D. at 293.  Of these factors, courts have consistently

held the fourth, the magnitude of the loss suffered, most significant.  *See, e.g.*, *Kaplan*, 240

F.R.D. at 93 ("Although courts have differed on how much weight to assign to each of the *Lax*

factors, we, as have other courts, shall place the most emphasis on the last of the four factors: the

approximate loss suffered by the movant."); *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259,

263 (S.D.N.Y. 2019); *Bo Young Cha*, 2012 WL 2025850, at *2; *see also Foley v. Transocean

Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[I]n determining the largest financial interest, most

courts simply determine which potential lead plaintiff has suffered the greatest total losses."

(quotation marks omitted)).

The table below summarizes the movants' relative positions:

|  | LuxUrban Investor Group | zCap/Marchetta Group |
|---|---|---|
| **Total Shares Purchased During Class Period** | 2,367 | 8,000 |
| **Net Shares Purchased During Class Period** | 2,367 | 8,000 |
| **Net Funds Expended During Class Period** | $11,309 | $37,179 |
| **Approximate Losses Suffered**[1] | $5,554 | $16,107 |

As both movants acknowledge, all four *Lax* factors favor the zCap/Marchetta Group.

Ordinarily, then, the zCap/Marchetta Group would be deemed to have the "largest financial

interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  The LuxUrban

---

[1] The LuxUrban Investor Group and the zCap/Marchetta Group use slightly different
methodologies to calculate loss.  *Compare* LuxUrban Investor Group Reply Br. at 2–3, *with*
zCap/Marchetta Group Surreply Br. at 2–3.  Under the LuxUrban Investor Group's approach, the
zCap/Marchetta Group's loss is $16,107.12, compared to $17,219 under the zCap/Marchetta
Group's approach.  Because either approach leads to the same outcome—a significantly higher
approximate loss figure for the zCap/Marchetta Group—the Court does not have occasion to
resolve this methodological dispute.

Investor Group argues, however, that the fact that the zCap/Marchetta Group is a coalition of two unrelated shareholders ought to disqualify its bid.

The LuxUrban Investor Group is incorrect. The PSLRA expressly permits "a group of persons" to be appointed lead plaintiff. *Id.* § 78u–4(a)(3)(B)(iii)(I). Courts in this District have recognized that a small group of unrelated individuals—that is, individuals who have no pre-litigation relationship—may appropriately be appointed lead plaintiff. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 391–92 (S.D.N.Y. 2008) ("[I]n this District . . . unrelated investors [may] join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class."); *see also, e.g., Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 119 (S.D.N.Y. 2010) (appointing as lead plaintiff a group of "sophisticated individuals who have demonstrated their intent to participate directly in this litigation and their willingness and ability to serve as class representatives").

To ascertain whether a lead plaintiff group is appropriate, courts generally consider three factors: "(1) the size of the group; (2) the relationship between the parties; and (3) any evidence that the group was formed in bad faith." *Peters v. Jinkosolar Holding* Co., No. 11 Civ. 7133 (JPO), 2012 WL 946875, at *7 (S.D.N.Y. Mar. 19, 2012); *see also Varghese*, 589 F. Supp. 2d at 392 (describing factors as "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa").

By those familiar standards, the zCap/Marchetta Group is qualified for appointment. First, the group is "relatively small and therefore presumptively cohesive." *Janbay*, 272 F.R.D. at 119. It consists of just one institutional investor and one individual. *See Peters*, 2012 WL

946875, at *7 ("[C]ourts appear to generally agree that a group comprising five or fewer members is appropriate."). Second, zCap and Marchetta have demonstrated their ability to work cooperatively. Dkt. 20, Ex. C ("Joint Declaration"). zCap's Chief Investment Officer (and primary contact for this litigation) lives in the same city as Marchetta. *Id.* ¶¶ 2–3. They have attended a conference call and communicated with each other through counsel. *Id.* ¶ 4. Each professes to be united in his "shared belief in the merits of this action," "shared desire to achieve the best possible result for the Class," "shared interest in prosecuting the case in a collaborative and likeminded manner," "shared understanding of the fiduciary obligations of Lead Plaintiffs," and "preparedness to supervise counsel and undertake all actions necessary to ensure that the Class's claims will be zealously and efficiently litigated." *Id.* ¶ 5. This sufficiently "demonstrate[s] their intent to participate directly in this litigation and their willingness and ability to serve as class representatives." *Janbay*, 272 F.R.D. at 119. Third, there is no indication that the group was formed in bad faith. There is, for example, no suggestion that the group was formed to box out an outside candidate for lead plaintiff. On the contrary, had the group not been formed, the losses suffered by both zCap and Marchetta would have been the first and second highest among all movants. *See Peters*, 2012 WL 946875, at *9 (contrasting "a group that is able to obtain lead plaintiff status only by aggregating the much smaller losses of a number of class members," which "potentially runs afoul" of the PSLRA, with one that "comprises the class members with, far and away, the largest financial interest of any individual or group that has otherwise come forward"); *see also Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 345–48 (E.D.N.Y. 2018). The PSLRA's policy is "not disserved by allowing those individuals to join together." *Peters*, 2012 WL 946875, at *9.

In sum, the zCap/Marchetta Group has the largest financial interest in the relief sought by the class, and there is no basis to disqualify it based on its composition.

### C.    Rule 23 Requirements

The PSLRA's final requirement is that the proposed lead plaintiffs satisfy Rule 23's requirements for class certification: numerosity, commonality, typicality, and adequacy.  At this early stage of litigation, however, "only the last two factors—typicality and adequacy—are pertinent." *Bo Young Cha*, 2012 WL 2025850, at *6 (quoting *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004)).

A lead plaintiff's claims are typical where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–74 (S.D.N.Y. 2010); *see also In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  A lead plaintiff's claims are adequate where it "does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that he seeks to represent." *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006) (citing *Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000)).  To obtain appointment as lead plaintiff, "[t]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003).

Both movants bring claims that are typical of the class they propose to represent.  Their claims arise from the same alleged conduct by defendants, and they make identical legal arguments why defendants are liable.  They each purchased all their LuxUrban shares during the

class period, and each then sold them at a loss. That "is all that is required to demonstrate typicality at this stage." *In re Petrobas Sec. Litig.*, 104 F. Supp. 3d 618, 624 (S.D.N.Y. 2015).

The LuxUrban Investor Group nevertheless contends that the zCap/Marchetta Group is "atypical" because of unique defenses that ostensibly could apply to its purchases. LuxUrban Investor Group Reply Br. at 4–7. But unique defenses such as these "are considered more appropriately as rebutting [a movant's] status as presumptive lead plaintiff," not in the context of this preliminary assessment of the Rule 23 factors. *Batter v. Hecla Mining Co.*, No. 19 Civ. 5719 (ALC), 2020 WL 1444934, at *4 (S.D.N.Y. Mar. 25, 2020). No cases the LuxUrban Investor Group cites is to the contrary. Each either assessed typicality at the later, more rigorous class-certification stage, *see, e.g., Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 123 (S.D.N.Y. 2001); *Landry v. Price Waterhouse Chartered Accts.*, 123 F.R.D. 474, 475 (S.D.N.Y. 1989), or in the context of the PSLRA's rebuttal provision, *see, e.g., In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20 Civ. 4420 (PAE), 2020 WL 5548856, at *8 (S.D.N.Y. Sept. 16, 2020) (discussing unique defenses outside the Rule 23 context).

The Court therefore does not address these concerns at this step, and finds both movants sufficiently typical to qualify for the PSLRA's presumptive lead-plaintiff provision. *See Batter*, 2020 WL 1444934, at *4. For similar reasons, both movants would be adequate class representatives. Neither has interests "antagonistic" to the class. *Glauser*, 236 F.R.D. at 189. Each has a "sufficient interest in the outcome to ensure vigorous advocacy on behalf of the class." *Petrobas*, 104 F. Supp. 3d at 624. And both have retained experienced and qualified proposed lead counsel: Glancy Prongay & Murray LLP (counsel for LuxUrban Investor Group) and Pomerantz LLP (counsel for zCap/Marchetta Group). Each has extensive experience as lead

counsel in securities class actions.  As such, both movants satisfy the PSLRA's preliminary assessment of Rule 23's adequacy and typicality requirements.

### D.    Rebuttal

Because the zCap/Marchetta Group has the largest financial interest in this case and satisfies the PSLRA's preliminary Rule 23 analysis, it is entitled to presumptive lead status.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The LuxUrban Investor Group contends, however, that the timing of zCap's purchases of LuxUrban shares exposes it to unique defenses, which rebut that presumption.  Specifically, the LuxUrban Investor Group notes that zCap purchased 2,250 shares of LuxUrban on January 22, 2024, five days after Bleeker Street Research published its Report. As such, it argues, the zCap/Marchetta Group is subject to "unique reliance-based defenses." LuxUrban Investor Group Reply Br. at 5.

That is mistaken.  Courts in this District have often appointed lead plaintiffs who, like zCap, purchased a corporation's securities before and after a partial corrective disclosure.  *See, e.g., Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 328 F.R.D. 86, 92 (S.D.N.Y. 2018) (appointing as lead plaintiff a shareholder who bought shares after a partial corrective disclosure "because she bought [shares] before the first corrective disclosure and held some of it throughout the remainder of the class period"); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355 (S.D.N.Y. 2011) (same); *see also In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 346 (S.D.N.Y. 2009) ("Without more, [a plaintiff's] purchase of these shares after the partial disclosures does not render [that plaintiff] atypical or subject it to unique defenses.").  An issue arises only when a plaintiff purchased all (or the vast majority) of his or her shares after a corrective disclosure, as in the cases on which the LuxUrban Investor Group relies  *See, e.g., Hebron Tech. Co.*, 2020 WL 5548856, at *8 (declining to appoint plaintiff who purchased shares "exclusively" on the day of

the only alleged disclosure); *Petrobas*, 104 F. Supp. 3d at 623 (declining to appoint plaintiff who purchased shares "after partial disclosures were made and just two weeks before the end of the class period"). Here, when zCap purchased 2,250 shares on January 22, 2024, zCap already held 3,750 shares in LuxUrban—shares purchased after the alleged misrepresentation (in the 3Q 10-Q) but before the first alleged corrective disclosure (in the Report). Indeed, in this case, unlike *Hebron* and *Petrobas*, the corrective disclosure was followed by a flat denial by LuxUrban of the Report's accuracy. *See* FAC ¶ 31 (quoting a press release describing the Report as "misleading" and "inaccurate"); *cf. Tronox*, 262 F.R.D. at 346 (lead plaintiff not atypical where purchases were made after partial corrective disclosures that did not "sufficiently correct . . . prior false and misleading statements"). At the time of zCap's purchases, then, the Report "was merely a third-party report that remained unconfirmed"—in fact, it was actively disputed—"by [LuxUrban] itself." *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355 (S.D.N.Y. 2011). The LuxUrban Investor Group has not successfully rebutted the zCap/Marchetta Group's presumptive status as lead plaintiff.[2]

The Court thus finds that the zCap/Marchetta Group is the "most adequate plaintiff" and appoints it lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i).

## III. Appointing Lead Counsel

The lead plaintiff may retain counsel to represent the class, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a 'strong presumption in favor of approving

---

[2] The LuxUrban Investor Group argues that the zCap/Marchetta Group must be disqualified because it supposedly miscalculated its approximate losses in its initial motion. LuxUrban Investor Group Reply Br. at 6. That is unpersuasive. The cases on which it relies all involved situations in which a movant made egregious factual errors. *See, e.g., Camp v. Qualcomm Inc.*, No. 18 Civ. 1208 (AJB) (BLM), 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (false oath and "significant errors in the transaction records"); *Micholle v. Ophthotech Corp.*, No. 17 Civ. 1758, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (trade date and pricing errors); *Karp v.*

a properly selected lead plaintiff's decisions as to counsel selection.'" *Sallustro v. CannaVest Corp.*, No. 14 Civ. 2900 (PGG), 2015 WL 1262253, at *10 (S.D.N.Y. Mar. 19, 2015) (quoting *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008)). Here, the zCap/Marchetta Group has selected the firm of Pomerantz LLP. Having reviewed the firm's submissions as to its pertinent background and experience, including its experience litigating securities class actions, the Court finds it well qualified to serve as lead counsel. *See Elstein v. Net1 UEPS Techs., Inc.*, 13 Civ. 9100 (ER), 2014 WL 3687277, at *8 (S.D.N.Y. July 23, 2014) ("Courts in this Circuit have previously approved the Pomerantz Firm as lead plaintiffs' counsel in securities class actions on a number of occasions."). Accordingly, the Court appoints Pomerantz LLP as lead counsel.

## CONCLUSION

For the foregoing reasons, the Court appoints the zCap/Marchetta Group as lead plaintiff and Pomerantz LLP as lead counsel. The Clerk of Court is respectfully requested to terminate all pending motions. The parties are directed to confer and by July 2, 2024 jointly file a proposed schedule for the filing of an amended complaint and briefing schedule for any motion to dismiss.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: June 18, 2024
        New York, New York

---

*Diebold Nixdorf, Inc.*, No. 19 Civ. 6180, 2019 WL 5587148, at *2 (S.D.N.Y. Oct. 30, 2019) (double-counting losses). Here, by contrast, the difference between the two movants' proposed loss calculations arose from a reasonable methodological dispute. The parties' difference of opinion does not establish inadequacy on the part of the zCap/Marchetta Group. The LuxUrban Investor Group's unsupported declaration that zCap has "violated its fiduciary duty to its investors," LuxUrban Investor Group Reply Br. at 6–7, does not assist it, either.