UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZCAP EQUITY FUND LLC and ROSS MARCHETTA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LUXURBAN HOTELS INC., BRIAN FERDINAND, and SHANOOP KOTHARI,<br><br>Defendants. | Case No. 1:24-cv-01030-PAE |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR RECONSIDERATION
AND/OR TO CERTIFY FOR INTERLOCUTORY APPEAL**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Tel. 212-589-4200
Fax. 212-589-4201

*Attorneys for Defendants LuxUrban
Hotels Inc., Brian Ferdinand, and
Shanoop Kothari*

# **TABLE OF CONTENTS**

                                                      **Page**

ARGUMENT ............................................................................................................................... 2

I.      The Court Should Reconsider the Opinion to Correct Multiple Clear Errors. ..................... 2

          A.      Clear Error #1: The Opinion Fails to Consider Critical Context When Evaluating Falsity, as Required By *Omnicare*. .......................................................... 2

          B.      Clear Error #2: The Opinion Fails to Scrutinize Anonymous-Source Allegations Under the Correct Second Circuit Standard. ........................................ 7

          C.      Clear Error #3: The Opinion Fails to Apply Second Circuit Precedent on Strong Circumstantial Evidence of Recklessness, or Weigh All Competing Inferences Under *Tellabs*. ............................................................................................ 8

II.     In the Alternative, the Court Should Certify the Opinion for Immediate Appeal. ............ 11

III.    Conclusion ......................................................................................................................... 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
  28 F.4th 343 (2d Cir. 2022) ................................................................................................. 9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) .................................................................................................. 8

*Dailey v. Medlock*,
  551 F.App'x 841 (6th Cir. 2014) ......................................................................................... 5

*In re DraftKings Inc. Sec. Litig.*,
  650 F.Supp.3d 120 (S.D.N.Y. 2023) (PAE) ....................................................................... 7

*Elliott Assocs., L.P. v. Covance, Inc.*,
  2000 WL 1752848 (S.D.N.Y. Nov. 28, 2000) .................................................................... 3

*Employees' Ret. Sys. of Rhode Island v. Williams Companies, Inc.*,
  889 F.3d 1153 (10th Cir. 2018) ........................................................................................... 3

*Gluck v. Hecla Mining Co.*,
  2025 WL 1983204 (2d Cir. July 17, 2025) .......................................................................... 3

*Gomez v. Credit Suisse AG*,
  2024 WL 506240 (2d Cir. Feb. 9, 2024) ......................................................................... 8, 10

*Gupta v. Att'y Gen. of U.S.*,
  52 F.Supp.3d 677 (S.D.N.Y. 2014) ..................................................................................... 2

*Jun v. 500.com Ltd.*,
  2021 WL 4260644 (E.D.N.Y. Sept. 20, 2021) .................................................................. 10

*Kasilingam v. Tilray, Inc.*,
  2023 WL 5352294 (S.D.N.Y. Aug. 21, 2023) .................................................................... 2

*Law. v. Cota*,
  764 F.App'x 65 (2d Cir. 2019) ............................................................................................ 2

*Lehmann v. Ohr Pharm., Inc.*,
  830 F.App'x 349 (2d Cir. 2020) .......................................................................................... 9

*Long Miao v. Fanhua, Inc.*,
  442 F.Supp.3d 774 (S.D.N.Y. 2020) (PAE) ....................................................................... 7

*In re Longfin Corp. Sec. Litig.*,
   2019 WL 3409684 (S.D.N.Y. July 29, 2019) ............................................................................2

*In re MGT Cap. Invs., Inc. Sec. Litig.*,
   2018 WL 1224945 (S.D.N.Y. Feb. 27, 2018) ............................................................................5

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015) ...................................................................................................1, 2, 3, 7

*In Re Philip Morris Int'l Inc. Sec. Litig.*,
   89 F.4th 408 (2d Cir. 2023) .......................................................................................................7

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
   573 F.3d 98 (2d Cir. 2009) ..................................................................................................9, 11

*Saraf v. Ebix, Inc.*,
   2024 WL 1298246 (2d Cir. Mar. 27, 2024) .............................................................................10

*Schiro v. Cemex, S.A.B. de C.V.*,
   396 F.Supp.3d 283 (S.D.N.Y. 2019) .......................................................................................10

*SEC v. Coinbase, Inc.*,
   761 F.Supp.3d 702 (S.D.N.Y. 2025) .......................................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ........................................................................................................ *passim*

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016) .....................................................................................................3

*Zech Cap. LLC v. Ernst & Young Hua Ming*,
   636 F.App'x 582 (2d Cir. 2016) ................................................................................................8

**Statutes**

28 U.S.C. §1292(b) ..........................................................................................................................11

Private Securities Litigation Reform Act of 1995 .........................................................................11

**Other Authorities**

Federal Rule of Civil Procedure 54(b) .............................................................................................1

S.D.N.Y. Local Rule 6.3 ..................................................................................................................1

On July 25, 2025, this Court issued an Opinion largely denying Defendants' motion to dismiss the AC (ECF 51; "Op."), concluding that the AC sufficiently alleged (1) that statements concerning (a) addition of the Four Hotels to LuxUrban's portfolio, and (b) LuxUrban's 1Q24 financials, were false or misleading; and (2) a strong inference of scienter regarding the former but not the latter. Op. 28-48. These holdings cannot be squared with controlling precedent, and suffer from at least three clear errors, each of which warrants reconsideration:

First, the Opinion overlooked the Supreme Court's directive in *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015), that courts must consider the "full context" in which a challenged statement was made when evaluating falsity. *Id*. at 190. Properly viewed in their full context, the Four Hotels statements were not false or misleading.

Second, the Opinion overlooked key facts that render the AC's anonymous-source allegations insufficient under Second Circuit law and this Court's previous rulings.

Third, the Opinion's scienter holding with respect to the Four Hotels statements was clear error because it found a strong inference of scienter based on weak circumstantial evidence and without weighing competing inferences as required by *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 323-24 (2007).

Finally, to the extent this Court believes the Opinion's scienter holding is proper under the Second Circuit's two-prong test, Defendants respectfully submit that this fundamentally conflicts with *Tellabs* and the issue should be certified for interlocutory appeal.

Accordingly, pursuant to Fed.R.Civ.P. 54(b) and L.R. 6.3, Defendants respectfully ask the Court to reconsider the Opinion and correct the clear errors of law discussed below. In the alternative, the Court should certify the Opinion for immediate appeal, and stay discovery pending resolution of that appeal.

## ARGUMENT

**I.     The Court Should Reconsider the Opinion to Correct Multiple Clear Errors.**

A motion for reconsideration should be granted when it is necessary "to correct a clear error or prevent manifest injustice." *In re Longfin Corp. Sec. Litig.*, 2019 WL 3409684, at *3-4 (S.D.N.Y. July 29, 2019) (dismissing on reconsideration for failure to plead scienter); *Kasilingam v. Tilray, Inc.*, 2023 WL 5352294 (S.D.N.Y. Aug. 21, 2023) (same). A court should reconsider its decision where it has "overlooked controlling decisions or factual matters that were put before it on the underlying motion ... and which, had they been considered, might have reasonably altered the result[.]" *Gupta v. Att'y Gen. of U.S.*, 52 F.Supp.3d 677, 679 (S.D.N.Y. 2014); *Law. v. Cota*, 764 F.App'x 65, 66-67 (2d Cir. 2019) (affirming dismissal on reconsideration).

Here, reconsideration is necessary to correct three clear errors and prevent manifest injustice.

### A. Clear Error #1: The Opinion Fails to Consider Critical Context When Evaluating Falsity, as Required By *Omnicare*.

The Opinion found that statements announcing the signing of the Four Hotel leases and including them in LuxUrban's "property portfolio" were sufficiently alleged to have been false or misleading because "[a] reasonable investor could easily have understood [them] to convey that [LuxUrban] had consummated the transactions[.]" Op. 36. But the Opinion failed to consider critical context that demonstrates the opposite.

Under *Omnicare*, a statement is only false or misleading if it would have misled a "reasonable investor" reading it "fairly and in context." 575 U.S. at 186-191, 194; MTD 14. That context properly includes a broad swath of public materials: "all [the] surrounding text, including hedges, disclaimers, and apparently conflicting information," other public statements by the company, the "customs and practices of the relevant industry," and other public information. *Id.*

2

at 190-91; *Gluck v. Hecla Mining Co.*, 2025 WL 1983204, at *5 (2d Cir. July 17, 2025) (statement not "false or misleading in the context of [company's] general operations"). Whether a statement was false or misleading is an objective inquiry focused on a "reasonable investor" who is assumed to be informed about that full context, including an understanding of the relevant industry and the Company's prior public statements, and who incorporates all public information into their decision-making. *Omnicare*, 575 U.S. at 186-87. Here, Defendants presented—but the Opinion failed to consider—essential context that made the Four Hotels statements not misleading.

***No Reasonable Investor Would Have Understood "Signing of a Lease" as Conveying Consummation of an MLA Transaction***. First, under *Omnicare*, a reasonable investor in a hotel company whose business involves complex commercial-lease transactions is assumed to understand the fundamentals of that industry: that signing and closing an MLA transaction is a multi-step process, involving numerous contingencies that must be satisfied before closing, and that executing the lease does not guarantee the transaction will close. 575 U.S. at 190-91; *Tongue v. Sanofi*, 816 F.3d 199, 214 (2d Cir. 2016) ("reasonable investor" in pharmaceutical company understands FDA-approval process). It is common knowledge across industries that signing a contract and closing that transaction generally are not the same thing, that there are typically several interim steps between signing and closing, and that various contingencies and risks may prevent consummation of the transaction. MTD 4-5; *Employees' Ret. Sys. of Rhode Island v. Williams Companies, Inc.*, 889 F.3d 1153, 1163 (10th Cir. 2018) ("reasonable investor" understood risk of an agreed merger transaction not being consummated despite descriptions of it as "done," "completed," and "finished"); *Elliott Assocs., L.P. v. Covance, Inc.*, 2000 WL 1752848, at *9 (S.D.N.Y. Nov. 28, 2000) (discussing "the usual level of uncertainty as to whether any proposed merger will actually be completed").

3

Moreover, LuxUrban's own statements described the complexities of the MLA process. Its August 2022 IPO Prospectus, already before the Court, distinguished between units LuxUrban was currently "operat[ing]" and others that were "subject to executed leases or letters of intent" but not yet commercially available. Ex. 1 at 5. Regarding the latter, the Company specifically disclosed several additional steps needed to close on those leases, including providing letters of credit and funding and delivering security deposits:

> [W]e entered into leases, letters of intent, or agreements to enter into leases with [future] start dates … for an additional 1,512 units …. ***We will be required to negotiate and execute definitive leases for the foregoing properties and post letters of credit in connection with the execution of such leases….*** required security deposits relating thereto shall be funded from working capital, proceeds of this offering, [or] additional borrowings…. (Ex. 1 at 6)

As demonstrated in LuxUrban's 10-Ks, 10-Qs, and other filings, already before the Court, the Company continued to explicitly distinguish between these two categories of properties throughout the class period, listing those "under lease, operating" (for which lease terms and "commencement date" were disclosed) separately from those, including the Four Hotels, that were "under lease, not operating" (lease terms and commencement date not disclosed). MTD 5-7; Ex. 5 at 18-20, Ex. 10 at 9, Ex. 14 at 5 (examples); *see also* Ex. 20 at 7 (distinguishing between signing and closing when referencing "expected closing of noted lease transactions"). The 10-Ks also specifically disclosed numerous contingencies and risks that might prevent a signed MLA from closing:

> ***When we execute leases for new properties, the landlord . . . may be unable or unwilling to deliver the property [when] initially projected, or we may encounter other unforeseen delays…. Many newly-leased properties may become available to us only after a considerable period of time***[.]
>
> ***Newly-leased properties could be more difficult or expensive to onboard, have undisclosed conditions that result in unanticipated expenses or claims against us for which we may have little or no effective recourse against the landlord[.]***
>
> ***Our access to properties that we have leased … may be delayed or suspended….*** [O]wners may desire or be required to remodel, remediate or maintain their

4

properties in a manner … which could prevent the rental of units …. Due to such delays resulting from renovation overruns, union issues and other factors beyond our control, we were unable to honor reservations for the dates we anticipated to bring certain properties online.

***Our rights and responsibilities under our leases*** *… **will from time to time give rise to disagreements, which may include disagreements over … rights in circumstances of early termination and unwinding of lease obligations … [and] a party's right to terminate a lease[.] We and our landlords may be unable to resolve such disagreements amicably….***

***Our leases may be subject to termination before they are scheduled to expire*** in certain circumstances, including … noncompliance with underlying covenants governing the property, or … failure to meet specified financial or performance criteria.

Ex. 2 at 17-19; Ex. 24 at 30-33; *see* Ex. 5 at 32, Ex. 11 at 34, Ex. 13 at 38, Ex. 27 at 43, Ex. 28 at 50 (10-Qs); MTD 4-5; Reply 4-5.

Within this context, no reasonable investor would have understood an MLA lease signing to mean the transaction was a "done deal." Op. 31. Rather, they would have understood that: further LuxUrban action was required to close the transaction, including posting/delivering letters of credit and/or security deposits; the owner would have to satisfy delivery conditions and deliver possession of the property; other issues might still arise that could delay or prevent closing; and early lease termination was possible even before delivery of the property. *Dailey v. Medlock*, 551 F.App'x 841, 847-48 (6th Cir. 2014) (reasonable investor assumed to understand industry context that, with risk discussions, rendered statements not misleading); *In re MGT Cap. Invs., Inc. Sec. Litig.*, 2018 WL 1224945, at *12 (S.D.N.Y. Feb. 27, 2018) (no falsity where company "disclosed the relevant risks that the[] transactions would not close"). Indeed, it was these disclosed risks that resulted in the Trinity, Royalton, and James transactions not being consummated. MTD 8-10 (Trinity owner did not "make the changes necessary for operating the hotel"; agreements related to Royalton lease were not executed; James' owner failed to satisfy delivery conditions).

This same context also fatally undermines inferences the Opinion drew from other allegations viewed in isolation. Later one-off references to the Trinity and Royalton leases as "proposed," when explaining that they had not closed, do not show that the lease agreements were never signed—they merely reflect that the transactions were not consummated. MTD 8-9; Reply 2-3. Likewise, the Company's later removal of the "under lease, not operating" category (including the Four Hotels) from its portfolio does not, in context, suggest that their prior inclusion was misleading: their removal was simply in line with LuxUrban's new policy not to announce transactions until "they are opened for hosting guests and have completed the entire MLA process." MTD 11-13.

***The Opinion Overlooked Critical Context for the James Hotel Statements.*** The Opinion also overlooked the James owner's contemporaneous confirmation of that transaction in the January 30, 2024 press release, which belies any notion that the lease was not signed. MTD 8; Reply 3-4; Ex. 20 at 6 ("Allen Gross, CEO of GFI, said, 'GFI looks forward to collaborating with LuxUrban on additional transactions …. we are very excited to be working with LuxUrban.'"). Furthermore, in concluding that Ferdinand's statement that the Company was "in possession" of the James was adequately pleaded as false, the Opinion overlooked multiple statements on the same call that explicitly stated the Company was *not* in possession. Op. 32. The entire exchange, already before the Court, is presented below:

> Analyst: Can you comment if the James [] is in possession in March as expected?
>
> Ferdinand: So we are currently not operating, but in possession…. [W]e're working through the union bond issues with the union and the owner, and ***we do expect to take possession of that property as we work through the balance of the union bond issues***….
>
> Analyst: And that's ***expected this quarter***? Or ***can you comment on the timing of that***?

Kothari: Yes, *I would expect this quarter*.

Ex. 25 at 14. In short, Ferdinand's very next statement corrected the statement that the Company was "in possession"; the analyst's follow-up question shows he understood the Company was not in possession; and Kothari's response confirmed this. No reasonable investor could have understood this exchange as indicating LuxUrban was in possession of the James. *In Re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 426 (2d Cir. 2023) (statements not false or misleading in context of other statements on same call).

The Opinion's failure to analyze the challenged statements within the full context described above, under *Omnicare*, is clear error and warrants reconsideration.

**B. Clear Error #2: The Opinion Fails to Scrutinize Anonymous-Source Allegations Under the Correct Second Circuit Standard.**

It was also clear error to credit the allegations attributed to the "Royalton owner" in the *Bleecker* Report.

Relying on Second Circuit precedent, this Court has explained that anonymous-source allegations in short-seller reports should not be credited "when plaintiffs' counsel has not interacted with the unidentified source—and does not even know the source's name, position, or other attributes tending to bear on the source's credibility." *In re DraftKings Inc. Sec. Litig.*, 650 F.Supp.3d 120, 155 (S.D.N.Y. 2023) (PAE); *Long Miao v. Fanhua, Inc.*, 442 F.Supp.3d 774, 801 (S.D.N.Y. 2020) (PAE); Reply 2. Yet, the Opinion credited *Bleecker's* anonymous-source allegations on the theory that they came from "the Royalton's owner" who "'was in a position'…'to know the facts attributed to [him].'" Op. 33-34. But this overlooks a key fact: the Royalton's owner is an entity—MCR Hotels (Ex. 23 at 5)—not a person, and neither *Bleecker* nor Plaintiff identified who at MCR supposedly made the statement, or their position, or any other

7

indicia of their credibility. It was clear error to credit these allegations in finding the Royalton statements were adequately pleaded as false.

### C. Clear Error #3: The Opinion Fails to Apply Second Circuit Precedent on Strong Circumstantial Evidence of Recklessness, or Weigh All Competing Inferences Under *Tellabs*.

Finally, the Opinion's holding that the AC "provide[s] strong circumstantial support that Ferdinand and Kothari actually knew or recklessly disregarded that their statements announcing the addition of the four hotels to LuxUrban's portfolio were false" (Op. 41) is clear error because it finds scienter based solely on weak circumstantial allegations without weighing competing inferences under *Tellabs*.

Courts in this Circuit apply both the Circuit's pre-*Tellabs* two-prong test and *Tellabs*' holistic analysis when evaluating scienter:

> [P]laintiff may satisfy [the Reform Act's pleading] requirement by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness. Moreover, "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences."

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (quoting *Tellabs*). In light of the "inherently comparative nature of the scienter inquiry," the Court is not "require[d] … to draw all inferences in plaintiff's favor." *Zech Cap. LLC v. Ernst & Young Hua Ming*, 636 F.App'x 582, 585 (2d Cir. 2016). Rather, courts "must 'take into account plausible opposing inferences' and consider 'nonculpable explanations for the defendant's conduct[.]'" *Id.* To show strong circumstantial evidence of conscious misbehavior or recklessness, a plaintiff must allege particularized facts showing defendants acted with "*conscious* recklessness—i.e., a state of mind *approximating actual intent*, and *not merely* a *heightened form of negligence*." *Gomez v. Credit Suisse AG*, 2024 WL 506240, at *1 (2d Cir. Feb. 9, 2024).

8

Respectfully, the Opinion failed to follow these precepts. Rather than weigh competing inferences, it found a strong inference of scienter as to the Four Hotels statements simply because Ferdinand and Kothari were "directly involved in negotiating the MLAs with those hotels," and because Kothari later stated that LuxUrban had "oversimplified the MLA process." Op. 41-42. This is clear error in at least two respects.

First, Defendants' state of mind was shaped by the full context of the Four Hotels statements, as described in the MTD and above. Properly viewed in that context, their alleged involvement in those transactions and the MLA process cannot suggest recklessness at all, much less so strongly as to support scienter. The Opinion's conclusion otherwise is directly at odds with Second Circuit precedent requiring that circumstantial evidence of recklessness be so strong as to approximate actual intent. *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009); *Lehmann v. Ohr Pharm., Inc.*, 830 F.App'x 349, 352–53 (2d Cir. 2020) (similar allegations "[a]t most … pleaded negligence … not recklessness approximating actual intent").

Second, the Opinion did not mention or weigh nonculpable inferences with respect to these statements, as *Tellabs* requires. As the Court recognized with respect to the 1Q24 financials, Defendants' increased stock ownership over the class period is inconsistent with culpable intent and strongly suggests good faith. Op. 44-45. Both Defendants acquired far more stock than they sold (Kothari sold none)—aligning their interests with investors and setting themselves up to be victims of their own purported fraud. MTD 18-19; *Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022) (no scienter where defendants "bought more shares than they sold"). The Opinion offers no explanation as to why this stock-sale history creates a strong, non-culpable inference regarding statements concerning the 1Q24 financials, but was not mentioned or considered when evaluating the Four Hotels statements.

9

The Opinion also failed to consider other strong, non-culpable inferences. As discussed above, Defendants repeatedly disclosed the various steps, risks, and contingencies attendant to MLA transactions. These disclosures support a nonculpable inference the Opinion did not consider: that Defendants reasonably expected investors to understand their statements within the context of industry practices and their prior statements. *Gomez*, 2024 WL 506240, at *2 (no scienter; "offering documents … contained detailed warnings of the risks involved" in the transaction).[1] Similarly, the Opinion did not weigh opposing non-culpable inferences regarding Defendants' resignations. Op. 43-44. "[M]embers of management resign for all sorts of reasons, including that they were negligent … or simply because the optics of changing management are better for investors and regulators." *Schiro v. Cemex, S.A.B. de C.V.*, 396 F.Supp.3d 283, 303 (S.D.N.Y. 2019). "[R]esignations, without some indicia of highly unusual or suspicious circumstances, are insufficient to support the required strong circumstantial evidence of scienter." *Jun v. 500.com Ltd.*, 2021 WL 4260644, at *2 (E.D.N.Y. Sept. 20, 2021). No such circumstances are alleged here, and the far more compelling inference is that Defendants resigned because LuxUrban received a Nasdaq notice of non-compliance, and/or because the Company believed new management would be well-received by investors. Reply 8.

The Opinion's failure to require circumstantial evidence of recklessness so strong it approximated actual intent, or to weigh non-culpable inferences as required by *Tellabs*, are clear errors that warrant reconsideration.

---

[1] Nor does Kothari's later explanation that LuxUrban may have "oversimplified" previous descriptions of the MLA process "provide strong circumstantial evidence as to [defendant's] state of mind when the [challenged statements] were made." *Saraf v. Ebix, Inc.*, 2024 WL 1298246, at *3 (2d Cir. Mar. 27, 2024).

10

**II.      In the Alternative, the Court Should Certify the Opinion for Immediate Appeal.**

In the alternative, Defendants respectfully ask that the Court certify the Opinion for immediate appeal pursuant to 28 U.S.C. §1292(b), and stay discovery pending that appeal.

"A district court may certify an order for interlocutory appeal where it finds that such order (i) involves a controlling question of law (ii) as to which there is substantial ground for difference of opinion and (iii) that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *SEC v. Coinbase, Inc.*, 761 F.Supp.3d 702, 712 (S.D.N.Y. 2025).

To the extent this Court believes the weak circumstantial evidence of recklessness alleged here is sufficient to show a strong inference of scienter under the Second Circuit's two-prong test, without regard for competing non-culpable inferences, Defendants respectfully contend that the two-prong test conflicts with *Tellabs* and the Second Circuit should decide this important issue. The Second Circuit has not explicitly decided whether plaintiffs can plead scienter by showing motive and opportunity or circumstantial evidence of recklessness *alone*. Rather, the Circuit has chosen instead to interpret its pre-*Tellabs* two-prong test as consistent with *Tellabs*. *S. Cherry*, 573 F.3d at 108-10 (in Reform Act, Congress adopted a substantive standard modeled on Second Circuit's "strong inference" test but "did not adopt our motive-and-opportunity gloss for the pleading of intent or our alternative standard of recklessness"); *supra* 8. This attempt to reconcile the two-prong and *Tellabs* tests has resulted in a "circumstantial evidence of recklessness" standard so high that it effectively approximates *Tellabs*, finding scienter only where the totality of the allegations strongly indicates the defendant lied on purpose. But if the weak circumstantial evidence of recklessness alleged here suffices to plead a strong inference under Second Circuit law—notwithstanding stronger competing nonculpable inferences—then Defendants contend the Second Circuit's test is incompatible with *Tellabs* and this controlling issue of law is appropriate

11

for immediate appeal.

### III. CONCLUSION

Defendants respectfully submit that each clear error identified above warrants reconsideration and dismissal of the AC. In the alternative, the Opinion raises a controlling issue of law that should be certified for appeal.

Dated: August 8, 2025

Respectfully submitted,

BAKER & HOSTETLER LLP

By: /s/ Douglas W. Greene
Douglas W. Greene (*pro hac vice*)
dgreene@bakerlaw.com
Zachary R. Taylor
ztaylor@bakerlaw.com
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200

*Attorneys for Defendants LuxUrban Hotels Inc., Brian Ferdinand, and Shanoop Kothari*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 6.3

Pursuant to Local Civil Rule 6.3, I hereby certify that on August 8, 2025, I electronically filed the foregoing Memorandum of Law in Support of Defendants' Motion for Reconsideration and/or to Certify for Interlocutory Appeal. As measured by the word processing system used to prepare it, the memorandum has a word count of 3,499 and complies with Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

                                        **BAKER & HOSTETLER LLP**

                                        By:    */s/ Douglas W. Greene*
                                                      Douglas W. Greene