**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ZCAP EQUITY FUND LLC and ROSS MARCHETTA, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>LUXURBAN HOTELS INC., BRIAN FERDINAND, and SHANOOP KOTHARI,<br><br>    Defendants. | No. 1:24-cv-01030-PAE<br><br>CLASS ACTION |

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANTS' MOTION FOR RECONSIDERATION**
**AND/OR TO CERTIFY FOR INTERLOCUTORY APPEAL**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

     I.     The Court Did Not Commit any Error Justifying Reconsideration ........................ 1

          A.     Legal Standard ........................................................................................ 1

          B.     The Court Correctly Found That Plaintiffs Sufficiently Alleged the Falsity of Defendants' Growth Statements ................................................ 2

          C.     The Court Correctly Credited the Bleecker Report ................................... 5

          D.     The Court Correctly Held That Plaintiffs Sufficiently Pleaded Scienter for Certain Misstatements ..................................................................... 6

     II.     Interlocutory Appeal is Improper ............................................................................ 9

CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Associated Press v. U.S. Dept. of Def.*,
  395 F. Supp. 2d 17 (S.D.N.Y. 2005)..................................................................................8

*Bristol-Myers Squibb Co. v. Matrix Lab'ys Ltd.*,
  2015 WL 4430614 (S.D.N.Y. July 20, 2015) .....................................................................2

*Capitol Records, LLC v. Vimeo, LLC*,
  972 F. Supp. 2d 537 (S.D.N.Y. 2013)...............................................................................10

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
  957 F. Supp. 2d 277 (S.D.N.Y. 2013)........................................................................ *passim*

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*,
  2023 WL 1769810 (S.D. Cal. Feb. 2, 2023) ....................................................................6, 9

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014)..............................................................................................10

*Dailey v. Medlock*,
  551 F. App'x 841 (6th Cir. 2014) .......................................................................................3

*Ferrand v. Credit Lyonnais*,
  292 F. Supp. 2d 518 (S.D.N.Y. 2003)................................................................................8

*Gluck v. Hecla Mining Co.*,
  2025 WL 1983204 (2d Cir. July 17, 2025)......................................................................3, 9

*Gruber v. Gilbertson*,
  2021 WL 2482109 (S.D.N.Y. June 17, 2021) ...................................................................10

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
  986 F. Supp. 2d 524 (S.D.N.Y. 2014)........................................................................1, 9, 11

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
  2014 WL 5002090 (S.D.N.Y. Oct. 7, 2014)..................................................................10, 11

*In re Longfin Corp. Sec. Class Action Litig.*,
  2019 WL 3409684 (S.D.N.Y. July 29, 2019) ....................................................................2

*In re Long Wei Petroleum Inv. Holding Ltd. Sec. Litig.*,
  2014 WL 12745562 (S.D.N.Y. Aug. 22, 2014).................................................................11

*In re MGT Cap. Invs. Sec. Litig.*,
  2018 WL 1224945 (S.D.N.Y. Feb. 27, 2018)....................................................................3

*In re Philip Morris Int'l Inc. Sec. Litig.*,
   89 F.4th 408 (2d Cir. 2023) ......................................................................................5

*Kasilingam v. Tilray, Inc.*,
   2023 WL 5352294 (S.D.N.Y. Aug. 21, 2023) ...........................................................8

*MFW Assocs., LLC v. Plausteiner*,
   2016 WL 10650806 (S.D.N.Y. Apr. 27, 2016) ......................................................1, 2

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
   333 F. Supp. 3d 1315 (N.D. Ga. 2018) .....................................................................6

*Murray v. UBS Sec., LLC*,
   2014 WL 1316472 (S.D.N.Y. Apr. 1, 2014) .............................................................11

*New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*,
   122 F.4th 28 (2d Cir. 2023) ......................................................................................9

*Robb v. Fitbit Inc.*,
   2017 WL 219673 (N.D. Cal. Jan. 19, 2017) ..............................................................7

*Roofers Loc. No. 149 Pension Fund v. Amgen Inc.*,
   751 F. Supp. 3d 330 (S.D.N.Y. 2024) ...................................................................9, 10

*Saraf v. Ebix, Inc.*,
   632 F. Supp. 3d 389 (S.D.N.Y. 2022) .....................................................................10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ..................................................................................6, 7, 8, 10

*Zech Cap. LLC v. Ernst & Young Hua Ming*,
   636 F. App'x 582 (2d Cir. 2016) ...............................................................................8

**Statutes**

11 U.S.C. § 362.........................................................................................................11

28 U.S.C. § 1292(b) ..............................................................................................9, 10

**INTRODUCTION**

The Court largely denied Defendants' motion to dismiss the Amended Complaint. ECF 51 ("Opinion" or "Op.").[1] Defendants' request for reconsideration of that Opinion and/or to certify the Opinion for interlocutory appeal (ECF 53) ("Motion") does not identify any "controlling decisions or data" that the Court "overlooked." *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 311 (S.D.N.Y. 2013). Rather, it merely registers disagreement with the Court's conclusions, repeating previously rejected arguments and raising new ones that Defendants could have but did not make earlier. Reconsideration should be denied.

Defendants fail all three requirements for interlocutory review. "Interlocutory review is strictly reserved for exceptional cases," not garden-variety securities fraud actions such as this one. *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 986 F. Supp. 2d 524, 533 (S.D.N.Y. 2014). "[I]nterlocutory appeals are strongly disfavored in federal practice." *Id.* at 530. Interlocutory review would introduce substantial delay and waste limited judicial resources, and should be denied.

**ARGUMENT**

I.   **The Court Did Not Commit any Error Justifying Reconsideration**

A.  **Legal Standard**

"The standard governing motions for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'" *MFW Assocs., LLC v. Plausteiner*, 2016 WL 10650806, at *1 (S.D.N.Y. Apr. 27, 2016). "[R]econsideration is appropriate 'only when the moving party identifies an intervening

---

[1] "¶__" references are to the Amended Complaint ("AC") (ECF 30). "MTD" references are to the Memorandum of Law in Support of Defendants' Motion to Dismiss (ECF 42). "Ex." references are to exhibits to the Greene Declaration (ECF 44). Internal citations and quotations are omitted, and emphasis is added, unless otherwise indicated.

1

change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Id.* "Such a motion 'is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced.'" *Id*. "Submitting new authority in support of [] a motion [for reconsideration] is appropriate only where there is 'an intervening change of controlling law' or 'new evidence.'" *Bristol-Myers Squibb Co. v. Matrix Lab'ys Ltd.*, 2015 WL 4430614, at *7 (S.D.N.Y. July 20, 2015).

Defendants do not point to any intervening change of controlling law or newly available evidence. Defendants argue that the Court made three "clear errors[]" in the Opinion, but they do not identify "controlling decisions or data that the court overlooked[] . . . that might reasonably be expected to alter the conclusion reached by the court." *Kinross*, 957 F. Supp. 2d at 311-12.[2]

### B. The Court Correctly Found That Plaintiffs Sufficiently Alleged the Falsity of Defendants' Growth Statements

Defendants argue that the Court made a "clear error" in finding that Plaintiffs sufficiently alleged the falsity of misstatements concerning LuxUrban's growth because "a reasonable investor" in LuxUrban "is assumed to understand . . . that signing and closing an MLA transaction is a multi-step process, involving numerous contingencies that must be satisfied before closing, and that executing the lease does not guarantee the transaction will close." Mot. at 3.

This argument fails. *First*, Defendants already made it. *See* MTD at 1-2 ("LuxUrban never promised or guaranteed that the leases it signed would come to fruition, nor would any reasonable investor have believed that to be the case.") The Court disagreed, finding that "Defendants' suggestion that LuxUrban had announced nothing more than *the initiation* of the MLA process

---

[2] *In re Longfin Corp. Sec. Class Action Litig.* granted reconsideration in light of new allegations. 2019 WL 3409684, at *4 (S.D.N.Y. July 29, 2019).

with the four hotels is at war with the actual words defendants used contemporaneously." Op. at 35 (emphasis in Op.). Defendants' attempt "to revive an argument that the Court has already considered, addressed, and rejected" does not justify reconsideration. *Kinross*, 957 F. Supp. 2d at 315.

*Second*, Defendants' reliance on the distinction between "signing" a lease and "consummating" or "closing" an "MLA transaction" is a red herring. Defendants told investors that LuxUrban had "signed" certain leases, and Plaintiffs allege with particularity that it had not. For instance, Defendants told investors that LuxUrban had "signed" a "25-year Master Lease Agreement[]" for the Royalton Hotel but, after Bleecker Research reported that "[t]he owner of that building told us LuxUrban had *not* actually signed the lease," Defendants announced they were "withdrawing [their] prior statements regarding the Royalton." ¶¶37, 49, 128.

*Third*, Defendants' public statements did not make this distinction between "signing" and "consummating" or "closing."[3] When announcing that LuxUrban had signed an MLA for the James Hotel, Defendant Ferdinand thanked the James's owner for its "support, professionalism, and vision in *consummating* this transaction." Ex. 20 at 6 of 8. And, when Defendants announced the signing of MLAs for the Royalton and Truss hotels, Ferdinand stated that "[w]e . . . expect to consummate several *additional* MLAs in the near term," representing that the Royalton MLA had been "consummated." ¶130; *see also* Op. at 31 ("Ferdinand's reference to 'consummat[ing] several *additional* MLAs' indicated that the MLA with the Truss was already complete."). Defendants

---

[3] *Dailey v. Medlock* involved a "term of art" defined by "applicable federal banking regulations." 551 F. App'x 841, 847-48 (6th Cir. 2014). *In re MGT Cap. Invs., Inc. Sec. Litig.* involved allegations that the defendants failed to disclose that certain transactions "were unlikely to close" in the future. 2018 WL 1224945, at *12 (S.D.N.Y. Feb. 27, 2018). *Gluck v. Hecla Mining Co.* found that a statement about a company's "most important mines" did not concern specific mines that were not alleged to be among the "most important" ones. 2025 WL 1983204, at *5 (2d Cir. July 17, 2025).

3

point to a laundry list of risk warnings (Mot. at 4-5), but those addressed the operation of newly-leased properties and possible breaches of lease agreements. *See* Ex. 2 at 17, 19 (e.g., "Newly-leased properties could be more difficult or expensive to onboard;" "Our rights and responsibilities under our leases … will from time to time give rise to disagreements …."). [4]

*Fifth*, while Defendants do not identify any evidence suggesting that "reasonable investors" recognized this purported distinction between "signing" and "closing," Plaintiffs allege that *Bisnow*, a publication *for the commercial real estate industry*, recognized that Defendants' representations were misleading. ¶206 ("[T]here is no indication in the filing that the deals weren't final.").

Defendants also argue that the owner of the James Hotel "confirm[ed] … that transaction" (Mot. at 6), but Defendants rely on their own press release, which cannot be taken for its truth. Op. at 2 n.1 (taking judicial notice of extrinsic documents "not for the truth of the matters asserted therein," but only "for the fact that the statements were made"). Moreover, the statements attributed to the James Hotel's owner do *not* state that a lease was executed. Ex. 20 at 6 of 8. Defendants also contend that an earnings call colloquy establishes that an analyst "understood the Company was not in possession" of the James Hotel, despite Ferdinand's explicit statement to the contrary. Mot. at 7. Defendants already argued this (MTD at 9-10) and the Court disagreed (Op. at 32). Moreover, the discussion merely reflects the analyst's concern with when the hotel would open to guests, which Defendants stated required completing "negotiations with the union." Ex.

---

[4] Defendants cite LuxUrban's IPO prospectus as stating that "[w]e will be required to negotiate and execute definitive leases for the foregoing properties" (Mot. at 4 (citing Ex. 1 at 6)). However, in light of the preceding sentence (which Defendants omitted), this merely indicated that properties subject to "non-binding" "letters of intent" were not part of LuxUrban's portfolio until lease execution. Furthermore, the prospectus was issued nine months before the Class Period and Defendants do not identify equivalent Class Period disclosures.

25 at 14.[5]

## C. The Court Correctly Credited the Bleecker Report

Defendants told investors that LuxUrban "ha[d] signed" a "25-year Master Lease Agreement[]," for the Royalton. ¶128. Plaintiffs allege that this was false because LuxUrban had not signed an MLA for the Royalton. In support, Plaintiffs allege, *inter alia*, (1) that Bleecker Street reported on January 17, 2024, that "the owner of that building told us LuxUrban had not actually signed the lease" and (2) that LuxUrban admitted it had not signed an MLA when it announced that, despite its previous statement "that the Company had entered into a Master Lease agreement" for the Royalton, it was "withdrawing its prior statements regarding the Royalton." ¶¶37, 49.

Defendants previously argued that the Court should not credit the Bleecker Report because it was "solely based on an anonymous source" and was not "corroborated . . . through any of the Company's public statements." MTD at 12; *see also* ECF 45 (MTD Reply) at 2. The Court disagreed because "independent factual allegations corroborated" the Bleecker Report. Op. at 33. In particular, the Court noted that "[t]he AC pleads that LuxUrban itself effectively confirmed Bleecker Street Research's reporting when it recharacterized the 'signed' MLA as a 'proposed' agreement and removed the Royalton from its list of properties 'under lease,' among other measures walking back its growth story." Op. at 33. "Thus, well-pled independent and particularized facts corroborate those attributed to the Bleecker Report. This case thus tracks those sustaining allegations drawn from short-seller reports where there were strong indicia of reliability." Op. at 34 (discussing cases).

---

[5] *In Re Philip Morris Int'l Inc. Sec. Litig.* found that statements concerning the Japanese tobacco market did not falsely represent the prospects of specific products in the market. 89 F.4th 408, 426 (2d Cir. 2023).

Defendants reiterate their rejected argument (citing the same authorities the Court already addressed) with one irrelevant change. Before, Defendants argued that Bleecker should not be credited because it did not name the Royalton's owner; now, Defendants argue that the Royalton was owned by a corporate entity and Bleecker should not be credited because it did not name its source at that entity. Mot. at 7-8. This is the same argument, and it fails to address Defendants' admissions that corroborate the Bleecker Report.

### D. The Court Correctly Held That Plaintiffs Sufficiently Pleaded Scienter for Certain Misstatements

The Court ruled that "[t]he AC's allegations provide strong circumstantial support that Ferdinand and Kothari actually knew or recklessly disregarded that their statements announcing the addition of the four hotels to LuxUrban's portfolio were false when made." Op. at 41.

Defendants argue that this was "clear error" because the Court "f[ound] scienter based solely on weak circumstantial allegations without weighing competing inferences under *Tellabs*." Mot. at 8. Defendants' position that Plaintiffs' scienter allegations are "weak" is mere "disagreement" with the Court's conclusion. *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*, 2023 WL 1769810, at *4 (S.D. Cal. Feb. 2, 2023). Moreover, Defendants mischaracterize the Opinion as "f[inding] a strong inference of scienter . . . simply because Ferdinand and Kothari were 'directly involved in negotiating the MLAs with those hotels,' and because Kothari later stated that LuxUrban had 'oversimplified the MLA process[].'" Mot. at 9; *see Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 333 F. Supp. 3d 1315, 1325 (N.D. Ga. 2018) (denying reconsideration where "[d]efendants' argument [was] based on the false premise that the Court relied exclusively on the positions, responsibilities, and access to information allegations in finding that scienter was sufficiently alleged as to these three individuals").

Defendants contend that the Court should have reached the opposite conclusion for two

6

reasons. *First*, they argue that "Defendants' state of mind was shaped by the full context of the Four Hotels statement," so Defendants' direct involvement in LuxUrban's lease transactions "cannot suggest recklessness." Mot. at 9. This conclusory assertion "does not meaningfully address the holistic review on which the Court's prior Order . . . rest[ed]." *Robb v. Fitbit Inc.*, 2017 WL 219673, at *8 (N.D. Cal. Jan. 19, 2017).

*Second*, Defendants argue that the Court "did not mention or weigh nonculpable inferences with respect to the[] statements [concerning LuxUrban's growth], as *Tellabs* requires." Mot. at 9. Revisiting their previously addressed argument that their Class Period stock sales did not establish a motive to defraud (ECF 49 at 6-7), Defendants contend that "[t]he Opinion offers no explanation as to why this stock-sale history creates a strong, non-culpable inference regarding statements concerning the 1Q24 financials, but was not mentioned or considered when evaluating the Four Hotels statements." Mot. at 9. Defendants' position is that *Tellabs* requires that the Court "mention[]" Defendants' stock sales when assessing scienter for the growth statements and "explain" why Plaintiffs' allegations supporting Defendants' scienter outweighs the lack of a motive allegation. *Tellabs* does not impose this requirement.[6]

*Kinross* in instructive. There, the defendants moved for reconsideration of the Court's order granting in part and denying in part a motion to dismiss a securities fraud class action complaint, arguing that the Court's scienter analysis "did not give sufficient attention" to a non-fraudulent inference that the defendants were "simply overoptimistic" when making alleged misstatements. *Kinross*, 957 F. Supp. 2d at 315. The Court found that the motion "s[ought] to revive an argument

---

[6] These are not the only scienter allegations that the Court did not explicitly analyze. For instance, the Court did not address allegations that scienter is bolstered by Defendant Ferdinand's prior SEC settlement (¶¶226-37) and by the pattern of Defendants' misrepresentations and shifting explanations (¶¶198-209).

that the Court has already considered, addressed, and rejected," and held that, "[a]lthough the point was not expressly stated as such, the Court considered and rejected as implausible the asserted competing inference that defendants were merely naïvely overenthusiastic about the timetable they had set." *Id.* at 315 (citing *Ferrand v. Credit Lyonnais*, 292 F. Supp. 2d 518, 521–22 (S.D.N.Y. 2003) ("That the Court did not specifically reference every factual detail or incident ... does not necessarily establish that the Court did not consider that particular matter.")).

Here, the Court clearly understood the comparative nature of the scienter inquiry and considered "inferences in plaintiff's favor" as well as competing inferences. *Zech Cap. LLC v. Ernst & Young Hua Ming*, 636 F. App'x 582, 585 (2d Cir. 2016); *see* Op. at 42 ("The inference that the defendant acted with scienter need not be irrefutable, i.e., of the smoking-gun genre, or even the most plausible of *competing* inferences." (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007))). Indeed, the Court explicitly addressed Defendants' stock sale argument. Op. at 44-45.[7] "There is no basis for the Court to reconsider its conclusion, where defendants merely take issue with the Court's ruling." *Kinross*, 957 F. Supp. 2d at 315.

Defendants also argue (1) that their disclosures concerning "the various steps, risks, and contingencies attendant to MLA transactions" suggest a nonculpable inference, which they did not argue in their MTD, and (2) that the Court wrongly concluded that the Individual Defendants' departures under "suspicious circumstances" contributed to scienter. Mot. at 10. But "a motion [for reconsideration] is 'neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced.'" *Associated Press v. U.S. Dept. of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005).

---

[7] *Kasilingam v. Tilray, Inc.* reconsidered a prior ruling in light of controlling law regarding insider stock sales. 2023 WL 5352294, at *3 (S.D.N.Y. Aug. 21, 2023). That is irrelevant because this Court did not find scienter based on Defendants' stock sales.

Defendants simply disagree with the Court's scienter analysis, but their "disagreement regarding the weight of the competing inferences is not adequate grounds for reconsideration." *Acadia Pharms.*, 2023 WL 1769810, at *4.

## II.    Interlocutory Appeal is Improper

Defendants also seek interlocutory review. Under 28 U.S.C. § 1292(b), a party seeking interlocutory review must establish that the order appealed from (1) "involves a controlling question of law," (2) as to which there is a "substantial ground for difference of opinion," *and* (3) "that an immediate appeal would materially advance the ultimate termination of the litigation." "The proponents of an interlocutory appeal have the burden of showing that all three of the substantive criteria are met." *Facebook*, 986 F. Supp. 2d at 529. "[E]ven where the three legislative criteria of section § 1292(b) appear to be met, district courts retain 'unfettered discretion to deny certification' if other factors counsel against it." *Id.*

Defendants cannot satisfy any of these criteria. *First*, Defendants do not identify any question of law, let alone a controlling one. Defendants attempt to articulate two different questions of law. They assert that "[t]he Second Circuit has not explicitly decided whether plaintiffs can plead scienter by showing motive and opportunity or circumstantial evidence of recklessness *alone*." Mot. at 11 (emphasis in original). But the Second Circuit has repeatedly stated that a securities fraud plaintiff can plead a strong inference of scienter "by alleging (1) that the defendants 'had both motive and opportunity to commit fraud' *or* (2) 'facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Gluck*, 2025 WL 1983204, at *2; *see also, e.g.*, *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28, 48 (2d Cir. 2023). District courts recognize that this is a disjunctive standard with two separate paths to scienter. *See, e.g.*, *Roofers Loc. No. 149 Pension Fund v. Amgen Inc.*, 751 F.

9

Supp. 3d 330, 353 (S.D.N.Y. 2024) ("The Second Circuit has recognized two ways that a securities fraud plaintiff can plead a strong inference of scienter under the PSLRA . . ."); *Saraf v. Ebix, Inc.*, 632 F. Supp. 3d 389, 396 (S.D.N.Y. 2022) (similar); *Gruber v. Gilbertson*, 2021 WL 2482109, at *12 (S.D.N.Y. June 17, 2021) (similar). Thus, the applicable law is "well-established." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014). Furthermore, any suggestion that motive allegations are required to establish scienter is foreclosed by *Tellabs*. 551 U.S. at 325 ("[T]he absence of a motive allegation is not fatal.").

Defendants hint at a second question of law, stating that "if" Plaintiffs' scienter allegations suffice under Second Circuit law, "then" the Second Circuit's standard is "incompatible" with *Tellabs*. Mot. at 11. This conditional proposition is not "a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013). Rather, "Defendants seek the Second Circuit's opinion on whether, under Second Circuit precedent which has already been applied to the facts here," this Court properly weighed Plaintiffs' allegations concerning scienter. *In re Goldman Sachs Grp., Inc. Sec. Litig.*, 2014 WL 5002090, at *1 (S.D.N.Y. Oct. 7, 2014). "Such an examination necessarily requires a review of the Court's application of existing law to the unique facts at issue here." *Id*.

Moreover, as Defendants do not identify any case that even mentions this purported conflict between *Tellabs* and Second Circuit law, they cannot establish a "substantial ground for difference of opinion." 28 U.S.C. § 1292(b).

Finally, interlocutory review would not "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Defendants make no argument that it would, and "the mere possibility that a reversal of the Court's order would end the case is insufficient to meet this third

10

element." *Goldman Sachs*, 2014 WL 5002090, at *2. "[I]f the Second Circuit affirms the Court's decision, or rather yet, declines to hear [Defendants'] appeal, the result will be that this action will have been unnecessarily delayed by the interlocutory appeal." *Murray v. UBS Sec., LLC*, 2014 WL 1316472, at *7 (S.D.N.Y. Apr. 1, 2014). Here, a Second Circuit ruling on the scienter standard "will not resolve or advance the litigation because, as noted, scienter is determined on a holistic basis." *In re Long Wei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 WL 12745562, at *2 (S.D.N.Y. Aug. 22, 2014); *see also Facebook*, 986 F. Supp. 2d at 532 ("[T]he fact-specific nature of the legal issues at hand would, at most, compel a remand for repleading, which would delay the entire action."). Indeed, "Second Circuit interlocutory review of motion to dismiss decisions in securities cases is rarely granted[,]" as they "often cannot be resolved by pure questions of law, and resolution of pure questions of law by the appellate court does not obviate subsequent applications of fact to the determined law." *Id.* at 533.

Potential delay is especially concerning here because LuxUrban appears to be in dire financial straits. It has not filed financial statements since the third quarter of 2024, when it reported only $198,868 in cash and cash equivalents.[8] LuxUrban's bankruptcy or insolvency would deprive the putative class of an important source of recovery as well as complicate the prosecution of this Action with a possible stay of proceedings against the Company. 11 U.S.C. § 362. Interlocutory review should be denied.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion should be denied.

---

[8] LuxUrban Hotels Inc., Quarterly Report (Form 10-Q), at 1 (Nov. 19, 2024), available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1893311/000182912624007692/luxurbanhotels_10q.htm.

Dated: August 25, 2025

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jonathan D. Park*
Jeremy A. Lieberman
Jonathan D. Park
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
jpark@pomlaw.com

*Counsel for Lead Plaintiffs zCap Equity Fund LLC and Ross Marchetta, and Co-Lead Counsel for the Class*

**PORTNOY LAW FIRM**
Lesley F. Portnoy
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Lead Plaintiffs zCap Equity Fund LLC and Ross Marchetta*

12

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 6.3 AND 7.1(c)

The undersigned certificates that this memorandum of law contains 3,490 words and complies with the word-count limitations set forth in Local Civil Rule 6.3.

*/s/ Jonathan D. Park*
Jonathan D. Park
