**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ZCAP EQUITY FUND LLC and ROSS MARCHETTA, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LUXURBAN HOTELS INC., BRIAN FERDINAND, and SHANOOP KOTHARI, <br><br> Defendants. | Case No. 1:24-cv-01030-PAE |

**REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION FOR RECONSIDERATION**
**AND/OR TO CERTIFY FOR INTERLOCUTORY APPEAL**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Tel. 212-589-4200
Fax. 212-589-4201

*Attorneys for Defendants LuxUrban*
*Hotels Inc., Brian Ferdinand, and*
*Shanoop Kothari*

Plaintiffs' Opposition misses the point. The Motion for Reconsideration ("MFR"), explained how the Opinion overlooked both controlling precedent and facts in the record that, "had they been considered," would have "reasonably altered" the Court's findings of falsity and scienter regarding the Four Hotels statements. MFR 2. Plaintiffs do not meaningfully address Defendants' arguments. Instead, Plaintiffs rely on the boilerplate assertion that Defendants already raised these arguments and merely disagree with the Opinion. That is incorrect.

### I. The Opinion Overlooked Controlling Precedent and Context When Evaluating Falsity.

As detailed in the MFR, the Opinion overlooked *Omnicare*'s requirement that courts consider how a reasonable investor would have read the challenged statements "fairly" in their full context when evaluating falsity. MFR 1-7. Defendants also presented the most important context that framed a reasonable investor's understanding of the Four Hotels statements, including that: (1) signing and closing a transaction are not the same thing in the commercial real-estate industry, and it is standard practice for closing to be contingent on satisfaction of additional requirements; and (2) LuxUrban repeatedly disclosed the various steps attendant to closing MLA transactions and many risks that could prevent a signed MLA transaction from being consummated.[1] *Id.*; *Sneed v. Talphera, Inc.*, 2025 WL 2406424, at *5 (9th Cir. Aug. 20, 2025) (reasonable investor "presumed to carefully scour all the fine print"). Properly viewed in this context, no reasonable

---

[1] Plaintiffs mischaracterize the IPO Prospectus, suggesting it disclosed that additional steps would be required only as to "non-binding" "letters of intent." Opp. 4. But the Prospectus clearly distinguished between units LuxUrban was currently "operat[ing]," and units "subject to *executed leases or* letters of intent" but not yet commercially available, and stated the latter category required additional steps prior to "execution of [definitive] leases." MFR 4. LuxUrban then made this same distinction throughout the class period. Even if the Prospectus was issued before the class period, it formed critical context for LuxUrban's statements and was part of the total mix of information a reasonable investor is assumed to have understood.

investor would have understood LuxUrban's announcements of "signing" the Four Hotel leases as meaning the transactions were a "done deal." *Id.*

Plaintiffs do not address this and instead assert that Defendants merely "disagree" with the Opinion. Opp. 2-4. That is not the case.

*First*, the language Plaintiffs cite from the Opinion—finding "Defendants' suggestion that LuxUrban had announced nothing more than the initiation of the MLA process with the four hotels is at war with the actual words defendants used contemporaneously" (*id.*)—demonstrates that the Opinion failed to analyze the statements within their broader context as required by *Omnicare*.[2] Nowhere does it mention the industry context or LuxUrban's disclosures regarding the multi-step nature of and risks attendant to MLA transactions when evaluating the alleged falsity of the Four Hotels statements. That context negates any inference that a reasonable investor would have understood the announcements of the Four Hotel lease signings as conveying that the transactions were a "done deal," even if the statements did not explicitly distinguish between "signing" and "consummating" the transactions.[3] Opp. 3-4. And this is equally true regarding one-off statements the Opinion reads as indirectly implying certain transactions were "consummated." MFR 3.[4]

---

[2] *Employees' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297 (2d Cir. 2015), is inapposite. Opp 2-3 (citing Op. 35). There, the factual dispute did not concern how a reasonable investor would understand statements in context, and the court did not address *Omnicare*.

[3] That *Bisnow* observed "there [was] no indication in the filing that the deals weren't final" does not establish that a reasonable investor would have understood the deals were "final" in context. Opp. 4.

[4] While the Court read the November 30 press release describing LuxUrban's expectation it would "consummate several additional MLAs in the near future" as implying the Royalton and Truss transactions were consummated, the press release only described those leases as having been "signed" and not yet "integrated" or open to guests. Ex. 14. In this context, no reasonable investor would perceive those transactions as consummated. The same is true for the James announcement. Ex. 20; Opp. 3.

*Second*, Defendants provided authorities showing reasonable investors understand the difference between "signing" and "closing." Opp. 4; MFR 3; *Sedighim v. Donaldson, Lufkin & Jenrette, Inc.*, 167 F.Supp.2d 639, 650 (S.D.N.Y. 2001) ("The probability of a transaction occurring must be considered in light of the facts as they then existed[.]").

*Third*, Plaintiffs' arguments as to the James fail. Opp. 4. The Court did not address the surrounding text in the April 16 earnings call when evaluating the statement that the Company was "in possession of" the James. Op. 32. Nor does any rational reading of that exchange suggest that it concerned only when the James would "open to guests." MFR 6-7. And given that the James announcement is incorporated into the AC, the Court should consider the James' owner's confirmation of the transaction. *Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 n.3 (2d Cir. 2022) (may consider incorporated documents "for the truth of their contents").

## II.    The Opinion Overlooked Key Facts in Crediting the Bleecker Allegations.

Plaintiffs contend that the MFR repeats the "same [Bleecker] argument" previously raised, and that Bleecker was corroborated by later statements regarding the Royalton. Opp. 4-5. Not so. While the MTD argued that Bleecker cannot be credited under controlling precedent, the Opinion credited those allegations because they were attributed to the Royalton's "owner," whom the Opinion erroneously described as a person.  The Opinion overlooked that the Royalton owner is an entity (MCR Hotels), and nowhere in the AC is there any description of who at MCR purportedly spoke with Bleecker (e.g., a receptionist, or the CEO). Nor were these allegations corroborated by the Company's later descriptions of the Royalton lease. MFR 6-8.

3

### III.    The Opinion Overlooked Controlling Precedent in Finding a Strong Inference of Scienter.

Defendants do not merely "disagree" with the Opinion's conclusion on scienter. Opp. 6. Defendants assert that it flowed from two clear errors.

*First,* the Opinion found the circumstantial allegations "support[ed] that Ferdinand and Kothari actually knew or recklessly disregarded" that the Four Hotels statements "were false when made" (Op. 41-44) but failed to evaluate whether those allegations were so strong as to approximate *actual intent* to deceive, when weighed against stronger nonculpable inferences, as required by *Tellabs* and Second Circuit precedent. MFR 9.

*Second*, the Opinion did not address *any* competing nonculpable inference in determining that a strong inference of scienter was adequately pleaded, in contravention of *Tellabs*. *Id.* 9-10. The Opinion did not consider Defendants' lack of motive, even though it did so with regard to the 1Q24 financials.[5] *Id.* 9; *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 776 (2d Cir. 2010) (considering lack of motive in holistic analysis). It did not consider whether Defendants expected reasonable investors to understand their statements in the context of industry practices and prior disclosures. MFR 10; *W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F.App'x 717, 719 (2d Cir. 2009) (courts "must take into account plausible opposing inferences"). It did not weigh nonculpable inferences as to Defendants' resignations. MFR 10; *In re The Hain Celestial Grp. Inc. Sec. Litig.*, 2019 WL 1429560, at *18 (E.D.N.Y. Mar. 29, 2019) ("The Court must consider competing inferences," including that defendants resigned "because of negligence and mismanagement"). And the Opinion did not consider whether the circumstantial allegations, taken together with all competing

---

[5] Indeed, the Opinion's internal inconsistency further compels reconsideration. *See Kasilingam v. Tilray, Inc.*, 2023 WL 5352294 (S.D.N.Y. Aug. 21, 2023) (dismissing for lack of scienter on reconsideration due, in part, to inconsistency with prior rulings).

nonculpable inferences, "at most" pleaded "negligence," rather than "recklessness approximating actual intent." MFR 9.

Plaintiffs' reliance on *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F.Supp.2d 277, 315 (S.D.N.Y. 2013), is misplaced. There, the court denied reconsideration because, although its opinion had not "expressly" rejected defendants' nonculpable inference, it had "ma[de] that determination" elsewhere in the analysis. *Id.* Here, no part of the Opinion "considered, addressed, and rejected" (*id.*) competing nonculpable inferences as to the Four Hotel statements; to the contrary, the Opinion found competing nonculpable inferences *compelling* as to the 1Q24 financials and dismissed on that basis.

### IV.    Alternatively, the Court Should Certify the Opinion for Appeal.

Even if the Court were to find these holdings were not erroneous, they raise controlling issues of law that warrant appeal: (1) whether the Second Circuit's two-prong scienter test is consistent with the Reform Act and *Tellabs*; and (2) whether circumstantial evidence of recklessness alone is sufficient to show a strong inference of scienter, without regard for competing nonculpable inferences. MFR 11. Plaintiffs' arguments to the contrary fail.

*First*, Second Circuit opinions articulate a disjunctive two-prong standard—plaintiffs may plead a strong inference of scienter either through (1) motive and opportunity, *or* (2) circumstantial evidence of scienter—but there is a serious, controlling issue as to whether this is consistent with the Reform Act and *Tellabs*. *In re GeoPharma, Inc. Sec. Litig.*, 399 F.Supp.2d 432, 452 n.146 (S.D.N.Y. 2005) ("Examining the allegations separately under the rubrics of 'motive and opportunity' and 'conscious misbehavior or recklessness' is unduly formalistic and not required by the [Reform Act.]"); *Reilly v. U.S. Physical Therapy, Inc.*, 2018 WL 3559089, at *19 (S.D.N.Y. July 23, 2018) ("*Tellabs* instructs us 'not to scrutinize [motive and recklessness] allegation[s] in

isolation."). Plaintiffs have failed to identify any Second Circuit decision resolving whether this disjunctive two-prong standard is consistent with *Tellabs*' requirement that courts weigh all competing inferences.

*Second*, this is a pure question of law—whether circumstantial evidence alone can establish a strong inference of scienter, without weighing competing nonculpable inferences, including lack of motive. MFR 11; *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 197 (2d Cir. 2008) (granting interlocutory appeal on scienter standard).[6]

Finally, appeal would materially advance termination of this litigation. If the Second Circuit determines its test is inconsistent with *Tellabs*, then the Opinion must be reversed and the AC dismissed. *Id.* And LuxUrban's potential bankruptcy is no reason to deny appeal.

## CONCLUSION

Defendants respectfully ask the Court to reconsider the Opinion and dismiss the AC with prejudice, or certify the Opinion for appeal.

---

[6] *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F.Supp.2d 524, 534 n.4 (S.D.N.Y. 2014), is inapposite (negligence standard) and recognized that "questions concerning" the pleading standard for scienter are "threshold issues" appropriate for appeal. Opp. 11.

Dated: September 2, 2025

Respectfully submitted,

BAKER & HOSTETLER LLP

By:  */s/ Douglas W. Greene*

Douglas W. Greene (*pro hac vice*)
dgreene@bakerlaw.com
Zachary R. Taylor
ztaylor@bakerlaw.com
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200

*Attorneys for Defendants LuxUrban Hotels Inc.,*
*Brian Ferdinand, and Shanoop Kothari*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 6.3

Pursuant to Local Civil Rule 6.3, I hereby certify that on September 2, 2025, I electronically filed the foregoing Reply in Support of Defendants' Motion for Reconsideration and/or to Certify for Interlocutory Appeal. As measured by the word processing system used to prepare it, the memorandum has a word count of 1,749 and complies with Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

BAKER & HOSTETLER LLP

By:  */s/ Douglas W. Greene*
Douglas W. Greene

7