**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ZCAP EQUITY FUND LLC and ROSS MARCHETTA, individually and on behalf of all others similarly situated, <br><br><br> Plaintiffs, <br><br> v. <br><br> LUXURBAN HOTELS INC., BRIAN FERDINAND, and SHANOOP KOTHARI, <br><br><br> Defendants. | No. 1:24-cv-01030-PAE <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

**TABLE OF CONTENTS**

Page(s)

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   SUMMARY OF THE LITIGATION AND SETTLEMENT ................................................. 3

      A.    Factual and Procedural Background ...................................................... 3

      B.    Terms of the Settlement ........................................................................ 3

            1.    Cash Consideration and Release ................................................ 3

            2.    Notice to the Class .................................................................... 3

            3.    Exclusions and Objections .......................................................... 4

            4.    The Plan of Allocation ................................................................ 5

III.  ARGUMENT ...................................................................................................... 5

      A.    The Court Should Grant Final Approval of the Settlement ................................... 5

            1.    The Settlement Is Procedurally Fair ........................................... 7

            2.    The Settlement Is Substantively Fair .......................................... 9

                  a.    The Case is Complex and Continued Litigation Will be Protracted and Costly ............................................................ 10

                  b.    The Reaction of the Settlement Class Supports Final Approval .... 11

                  c.    Plaintiffs and Lead Counsel Were Sufficiently Informed During Settlement Negotiations ................................................. 12

                  d.    Plaintiffs Faced Risks to Establishing Liability and Damages ....... 13

                  e.    The Risks of Maintaining Class Action Status Through Trial ....... 15

                  f.    The Settlement Amount is Reasonable in Light of the Best Possible Recovery and Attendant Risks ........................................... 15

            3.    The Settlement Satisfies the Remaining Rule 23(e) Factors .................... 18

      B.    The Court Should Approve the Plan of Allocation ............................................. 19

      C.    The Court Should Approve the Notice Disseminated to the Settlement Class as Satisfying the Requirements of Rule 23 and Due Process .................................. 22

D.     The Court Should Certify The Settlement Class.....................................................24

IV.  CONCLUSION ...........................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................24

*Arbuthnot v. Pierson*,
    607 F. App'x 73 (2d Cir. 2015) ........................................................................22, 23

*Baron v. HyreCar Inc.*,
    2024 WL 3504234 (C.D. Cal. July 19, 2024)........................................................17

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
    2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)..........................................................15

*Cagan v. Anchor Sav. Bank FSB*,
    1990 WL 73423 (E.D.N.Y. May 22, 1990) ............................................................18

*Christine Asia Co v. Yun Ma*, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)................9, 13, 15, 19

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)................................................................... *passim*

*City of Providence v. Aeropostale*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) *aff'd sub nom Arbuthnot v.*
    *Pierson*, 607 F. App'x 73 (2d Cir. 2015)................................................................10

*Doe #1 by Parent #1 v. New York City Dep't of Educ.*,
    2018 WL 3637962 (E.D.N.Y. July 31, 2018)..........................................................14

*Facebook Inc., IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394, 414 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook,*
    *Inc.,* 822 F. App'x 40 (2d Cir. 2020)......................................................................17

*Granada Invs., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ...............................................................................17

*Hicks v. Stanley*,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)..........................................................11

*Hunter v. Blue Ridge Bankshares, Inc.*,
    2025 WL 1649323 (E.D.N.Y. June 11, 2025) ..........................................................8

*In re "Agent Orange" Prod. Liab. Litig.*,
    611 F. Supp. 1396 (E.D.N.Y. 1985) .......................................................................17

*In re Alloy, Inc. Sec. Litig.*,
    2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ...............................................................10

*In Re American Bank Note Holographics*,
    127 F. Supp. 2d 418 (S.D.N.Y, 2001).........................................................................14

*In re AOL Time Warner, Inc.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)........................................................10, 12, 13

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)...................................................................12, 15

*In re China Sunergy Sec. Litig.*,
    2011 WL 1899715 (S.D.N.Y. May 13, 2011) ..............................................................16

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013).....................................................................9, 21

*In re Datatec Sys., Inc. Sec. Litig.*,
    2007 WL 4225828 (D.N.J. Nov. 28, 2007) .................................................................21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................................................................15

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................13, 19

*In re Humanigen, Inc. Sec. Litig.*,
    No. 2:22-CV-05258 (WJM), 2024 WL 4182634 (D.N.J. Sept. 13, 2024) ..............................18

*In re IMAX Securities Litigation*,
    283 F.R.D. 178 (S.D.N.Y., 2012) ...................................................................9, 12, 19

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ...........................................................................11

*In re PPDAI Grp. Inc. Sec. Litig.*,
    2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ................................................................19

*In re PaineWebber Ltd. Partnerships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)...................................14

*In re Revolution Lighting Techs., Inc. Sec. Litig.*,
    2020 WL 4596811 (S.D.N.Y. Aug. 11, 2020).............................................................11

*In re Sony Corp. SXRD*,
    448 F. App'x 85 (2d Cir. 2011) ..............................................................................9

iv

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
2015 WL 5333494 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part*,
699 F. App'x 8 (2d Cir. 2017) ....................................................................................20

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...........................................................11

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ....................12

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)........................................................................19

*Kommer v. Ford Motor Co.*
2020 WL 7356715 (N.D.N.Y. Dec. 15, 2020)...........................................................10

*Lea v. Tal Educ. Grp.*,
2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ...........................................................11

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................................13

*Marsh & McLennan*,
2009 WL 5178546 (S.D.N.Y. Dec 23, 2009) ............................................................19

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012)........................................................................18

*Moses v. New York Times Co.*,
79 F.4th 235 (2d Cir. 2023) .........................................................................6, 7, 8, 9

*Rodriguez v. CPI Aerostructures, Inc.*,
2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023)..............................................................6

*Rodriquez v. It's Just Lunch Int'l*,
2020 WL 1030983 (S.D.N.Y. Mar. 2, 2020) ...............................................................9

*Schutter v. Tarena Int'l, Inc.*,
2024 WL 4118465 (E.D.N.Y. Sept. 9, 2024) ..............................................................7

*Thant v. Rain Oncology Inc.*,
2026 WL 1113721 (N.D. Cal. Apr. 24, 2026) .............................................................8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)...........................................................................5, 13, 15

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982).......................................................................................24

**Statutes**

15 U.S.C. §78u-4(a)(7) ...............................................................................................................22

PSLRA ............................................................................................................................22, 24

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... *passim*

**Other Authorities**

Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action
    Litigation: 2025 Full-Year Review* (NERA Jan. 21, 2026) ......................................................16

Lead Plaintiff Ross Marchetta ("Marchetta" or "Plaintiff"), individually and on behalf of the Settlement Class, respectfully submits this memorandum of law in support of his motion seeking final approval of the proposed Settlement of this Action, releasing the Released Plaintiffs' Claims against Defendants and the other Released Defendant Parties in exchange for a cash payment of $3,000,000 for the benefit of the Settlement Class.[1]

## I.    PRELIMINARY STATEMENT

The proposed Settlement, providing for a cash payment of $3,000,000 in exchange for the resolution of Plaintiffs' claims, represents a fair, adequate, and reasonable outcome for the Settlement Class given the risks and expenses of continued litigation, including the risk of a smaller recovery years from now, or no recovery at all. Upon final approval of the Settlement and the processing of claims, Settlement Class Members will promptly receive cash payments, avoiding further delay, uncertainty, and risk.

The Settlement resolves Plaintiffs' claims against Defendants LuxUrban Hotels Inc. ("LuxUrban"), Brian Ferdinand ("Ferdinand"), and Shanoop Kothari ("Kothari", and together with LuxUrban and Ferdinand, "Defendants"). Before agreeing to the Settlement, Plaintiffs thoroughly investigated their claims and filed an Amended Complaint with detailed factual allegations supporting their theories of Defendants' liability. The Settlement was the product of arms'-length negotiations between the Parties, represented by experienced counsel, under the auspices of an

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation and Agreement of Settlement dated as of March 26, 2026 (ECF No. 79-1) (the "Stipulation"). As stated in the accompanying Declaration of Jonathan D. Park ("Park Declaration" or "Park Decl."), the other Lead Plaintiff, zCap Equity Fund LLC, dissolved during the pendency of this Action, and Lead Counsel determined that it should not be included as a plaintiff in this motion or the motion for final approval of the Settlement. *See* Park Decl. ¶9. Accordingly, in this memorandum, the terms "Plaintiff" and "Lead Plaintiff", singular, refer to Lead Plaintiff Ross Marchetta, while the terms "Plaintiffs" and "Lead Plaintiffs" refer to both Lead Plaintiff Ross Marchetta and Lead Plaintiff zCap.

experienced mediator. *See* Park Decl. ¶¶52-54. These facts indicate that the Settlement is fair, reasonable, and adequate.

While Plaintiff believes that he would be able to prove their claims at trial, Plaintiff acknowledges that he would have faced significant challenges in obtaining a full judgment on their claims, including obtaining class certification, defeating Defendants' anticipated motion(s) for summary judgment, and subsequently prevailing at trial on complex securities claims, on the expected post-trial motions and appeal, and then, finally, enforcing the judgment.

In this case, Defendants' financial condition posed a heightened risk to the prospects of securing a recovery for the Settlement Class. Two of the three Defendants—LuxUrban and Ferdinand—have filed for bankruptcy, and insurance coverage potentially applicable to this Action totaled only $12.5 million, an amount that was significantly eroded by the time of the Settlement and would continue to erode quickly were litigation to continue. Park Decl. ¶¶77-80. Even were Plaintiff to prevail at trial, there is no guarantee the Settlement Class would recover as much as the Settlement Amount, or anything at all.

On March 31, 2026, the Court preliminarily approved the Settlement, preliminarily finding that it would "likely be able to approve the Settlement as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e)(2), subject to further consideration at the Settlement Hearing." ECF No. 82 (the "Preliminary Approval Order") at 2.

As directed by the Preliminary Approval Order, Lead Counsel, through the Court-approved Claims Administrator, issued notice to the Settlement Class. To date, no Settlement Class Member has submitted or filed an objection to any aspect of the Settlement, and no Settlement Class Member has requested exclusion from the Settlement Class. *See* Park Decl. ¶112.

2

For the following reasons, therefore, this Court should approve the Settlement as fair, reasonable, and adequate, and it should likewise approve the Plan of Allocation.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.    Factual and Procedural Background

The procedural history of this Action is set forth in detail in the accompanying Park Declaration, ¶¶14-62.

### B.    Terms of the Settlement

#### 1.    Cash Consideration and Release

The Settlement provides for a payment of $3,000,000 in cash for the benefit of the Settlement Class. Stipulation ¶¶1(ll), 6. If the Court grants final approval of the Settlement, Plaintiffs and Settlement Class Members will forever release the Released Plaintiffs' Claims against the Released Defendant Parties. *Id*. ¶4. The "Released Plaintiffs' Claims" are limited to claims that Plaintiffs did or could have asserted in this Action (including claims dismissed by the Court), or any forum, that "arise out of, are based upon, or relate to *both* (i) the allegations, transactions, facts, activities, matters or occurrences, conduct, representations, or omissions involved, set forth, or referred to in the Action *and* (ii) the purchase or acquisition of LuxUrban Securities during the Class Period." *Id*. ¶1(ii) (emphases added). The Individual Defendants will release any and all claims that could have been brought against the Released Plaintiff Parties "that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants." *Id*. ¶¶1(gg), 5.

#### 2.    Notice to the Class

In the Preliminary Approval Order, the Court approved the retention of Strategic Claims Services ("SCS") as Claims Administrator. Preliminary Approval Order ¶8. As directed by the Preliminary Approval Order, SCS, *inter alia*: (i) within thirty business days after entry of the

3

Preliminary Approval Order, mailed the Postcard Notice to all potential Settlement Class Members that could be identified with reasonable effort, including those individuals and entities reflected in the records received from LuxUrban's former transfer agent; (ii) used reasonable efforts to give notice to nominees such as custodians and brokerage firms and mailed or emailed nominees such as custodians and brokerage firms that hold stock on behalf of beneficial owners; (ii) published the Summary Notice in *Investor's Business Daily* and over *GlobeNewswire*; (iii) established the Settlement Website at which Settlement Class Members could obtain important documents regarding the Settlement (including the Notice and the Stipulation) and file claims; and (iv) maintained a toll-free telephone number for Settlement Class Members to obtain information about the Settlement. *See* Declaration of Sarah Evans Concerning: (A) Mailing/Emailing of the Notice; (B) Publication of the Summary Notice; And (C) Report on Requests for Exclusion and Objections ("Evans Decl.") ¶¶3-12; *see also* Evans Decl., Ex. D (proof of publication of Summary Notice).

The Notice advised potential Settlement Class Members: (1) of the terms of the Settlement and Plan of Allocation; and (2) that Plaintiffs and Lead Counsel would seek: (a) a fee award to Lead Counsel not to exceed 33% of the Settlement Amount, plus interest, (b) reimbursement of actual Litigation Expenses, not to exceed $275,000, and (c) awards to Plaintiffs not to exceed $10,000 in total. Evans Decl., Ex. A (Notice and Claim Form); *see also* Evans Decl., Ex. C (Postcard Notice).

To date, 15,793 notices (either a mailed Postcard Notice or an emailed link to the Long Notice and Claim Form on the Settlement website) were sent to potential Settlement Class Members. Evans Decl. ¶8.

### 3.    Exclusions and Objections

Pursuant to the Preliminary Approval Order, the Notice and Postcard Notice state that members of the Settlement Class may request exclusion from the Settlement Class no later than

August 18, 2026, and explain how to do so. Evans Decl., Ex. A (Notice and Claim Form) at 8-9; Evans Decl., Ex. C (Postcard Notice). The Notice and Postcard Notice also state that Settlement Class Members may object to the Settlement, the Plan of Allocation, and the requests for fees and expenses, no later than August 18, 2026, and explain how to do so. Evans Decl., Ex. A (Notice and Claim Form) at 10; Evans Decl., Ex. C (Postcard Notice). To date, no Settlement Class Member has requested exclusion from the Settlement Class or objected to the Settlement, the Plan of Allocation, or the requests for attorneys' fees, reimbursement of expenses, and awards to Plaintiffs. Evans Decl. ¶¶13, 14; Park Decl. ¶112. Plaintiff's reply papers in further support of final approval of the Settlement, to be filed by September 1, 2026, will address any objections and requests for exclusion.

### 4.    The Plan of Allocation

The Notice provides a thorough explanation of the Plan of Allocation. *See* Evans Decl., Ex. A at 12-18. The Plan of Allocation fairly and reasonably distributes the Net Settlement Fund to Settlement Class Members consistent with the federal securities laws and principles of loss causation. The Plan of Allocation establishes a formula that determines authorized claimants' recognized losses and calculates Settlement Class Members' *pro rata* share of the Net Settlement Fund (*i.e.*, the Settlement Fund less Notice and Administration Costs and any Court-approved attorneys' fees, expenses, and plaintiff awards). *Id*.

## III.    ARGUMENT

### A.    The Court Should Grant Final Approval of the Settlement

Rule 23(e) requires judicial approval of any class action settlement, which must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Public policy favors settlement, particularly in class actions. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action

context'"). Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of litigation. When evaluating a proposed settlement under Fed. R. Civ. P. 23(e), courts determine whether a settlement, taken as a whole, is fair, reasonable, and adequate, ensuring that it was not the product of collusion. *Id.*; *see also Rodriguez v. CPI Aerostructures, Inc.*, 2023 WL 2184496, at \*8 (E.D.N.Y. Feb. 16, 2023).

Rule 23(e)(2), as recently amended, identifies four factors for a court to consider in determining whether a class action settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's-length;
>
> (C) the relief provided for the class was adequate, taking into account: (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23 (e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Second Circuit has held that "the revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement." *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462-63 (2d Cir. 1974)).

*Grinnell* directs courts to consider:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability

of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. at 244 n.4 (quoting *Grinnell*, 495 F.2d at 242 n.3).

### 1.    The Settlement Is Procedurally Fair

"To evaluate the procedural fairness of a proposed settlement, a court must expressly consider the two factors under Rules 23(e)(2)(A)–(B): whether 'the class representatives and class counsel have adequately represented the class' and whether 'the proposal was negotiated at arm's length.'" *Schutter v. Tarena Int'l, Inc.*, 2024 WL 4118465, at *7 (E.D.N.Y. Sept. 9, 2024) (quoting Fed. R. Civ. P. 23(e)(2)(A)-(B)).

"'Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Id*. (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019)). "Here, there are no fundamental conflicts between the class representatives and the class members." *Id*. Plaintiff, like all Settlement Class Members, purchased LuxUrban Securities during the Class Period and was "damaged in the same or similar ways that the [Settlement] Class Members were damaged," and "are seeking to recover from Defendants' alleged misconduct." *Id*. "Therefore, their interests are aligned with those of other Settlement Class Members as they share the common objective of maximizing their recovery from [Defendants] for the same alleged misconduct." *Id*.

Further, Lead Counsel is qualified, experienced, and able to conduct the litigation. Pomerantz has successfully litigated dozens of securities class actions, including many in this District. *See, e.g., In re Petrobras Sec. Litig.*, No. 14-cv-09662 (S.D.N.Y. 2018) (Pomerantz, as

Lead Counsel, recovered $3 billion for class members); *see also* Park Decl., Ex. 4 (Pomerantz résumé). Thus, Lead Counsel is adequate.

In addition, "[c]ourts reviewing proposed settlements must also scrutinize the negotiating process, to ensure they resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" *Hunter v. Blue Ridge Bankshares, Inc.*, 2025 WL 1649323, at *14 (E.D.N.Y. June 11, 2025) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). Here, "[t]he record is clear that this Settlement was the product of arm's-length negotiations by informed, experienced counsel." *Id.* at *15. Plaintiffs and the Individual Defendants engaged in a formal mediation process, exchanging mediation statements in advance of a full-day mediation session overseen by an experienced mediator, and agreed to resolve the Action for an amount recommended by that mediator. Park Decl. ¶¶52-54. These were arm's-length negotiations between highly experienced counsel. "While the Second Circuit held in *Moses* that arm's-length-negotiated settlements are no longer entitled to a presumption of fairness, such circumstances support approval of settlements." *See Hunter v. Blue Ridge Bankshares, Inc*., 2025 WL 1649323, at *15 (E.D.N.Y. June 11, 2025) (citing *Moses*, 79 F.4th at 243).

Further, the experience and qualifications of the mediator, Jed R. Melnick, have been recognized by many courts, which further supports final approval of the Settlement. *See, e.g.*, *Thant v. Rain Oncology Inc.*, 2026 WL 1113721, at *6 (N.D. Cal. Apr. 24, 2026) (describing Mr. Melnick as "experienced and well-respected" and finding that his "involvement and oversight" as mediator weighed in favor of granting final approval to securities class action settlement).

Thus, this factor supports granting final approval to the Settlement. Rule 23(e)(2)'s two factors concerning the procedural fairness of a class action settlement are both satisfied here.

### 2.     The Settlement Is Substantively Fair

With respect to the evaluating the substantive fairness of a class action settlement, "the factors outlined in *Grinnell* and the revised Rule 23(e)(2) largely overlap." *Moses*, 79 F.4th at 244; *see also Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019) ("Rule 23(e)(2)(C)(i) incorporates the factors set out in *[Grinnell]*, and courts in this Circuit have long utilized the *Grinnell* nine-factor test in determining whether a settlement is substantively fair, reasonable, and adequate.").

While courts consider each *Grinnell* factor, "not every factor must weigh in favor of settlement, rather [a] court should consider the totality of these factors in light of the particular circumstances." *In re IMAX Securities Litigation*, 283 F.R.D. 178, 189 (S.D.N.Y., 2012). "[W]hen evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement into a trial or a rehearsal of the trial." *In re Sony Corp. SXRD*, 448 F. App'x 85, 87 (2d Cir. 2011). Indeed, because counsel are "most closely acquainted with the facts of the underlying litigation," courts give "great weight" to counsel's settlement recommendations, especially when negotiations are arm's length. *IMAX*, 283 F.R.D. at 189; *see also Rodriquez v. It's Just Lunch Int'l,* 2020 WL 1030983, at *3 (S.D.N.Y. Mar. 2, 2020)* ("Where counsel for plaintiffs is able and experienced, particularly in the specific area with which these actions are concerned, counsel's judgment is entitled to great weight.") (citations omitted and cleaned up).

Plaintiff submits that the proposed Settlement is fair, reasonable and adequate and should be finally approved.

9

<b>a.  The Case is Complex and Continued Litigation Will be Protracted and Costly</b>

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381–82 (S.D.N.Y. 2013). This is particularly true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have 'long recognized' that securities class actions are 'notably difficult and notoriously uncertain' to litigate." *City of Providence v. Aeropostale*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (quoting *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012)), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). This Action is no exception. While Plaintiff believes that the claims are meritorious, it is highly uncertain whether he would be able to overcome all obstacles to proving the claims, establishing Defendants' liability, and, critically, enforcing a judgment. Further litigation would have required substantial additional expenditures of time and resources, with a material risk of a lower recovery, if any. *See In re AOL Time Warner, Inc.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages").

In the absence of the Settlement, Plaintiff would have to survive dispositive motion practice, and then prepare for and prevail at trial, and then prevail *again* on the inevitable post-trial motions and appeals. At each additional step of litigation, Plaintiff would continue to face a robust defense from experienced and capable counsel. *See In re Alloy, Inc. Sec. Litig.*, 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues are "likely to be litigated aggressively, at substantial expense to all parties").

10

Even if Plaintiff prevailed in securing a larger judgment after a trial, the additional delay through post-trial motions and the appellate process could deny the Settlement Class any recovery for years, reducing its value in comparison to the present proposed recovery. *See Kommer v. Ford Motor Co.* 2020 WL 7356715, at *4 (N.D.N.Y. Dec. 15, 2020) ("even if a shareholder or class member was willing to assume all the risks of pursuing . . . further litigation [.]. . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery"). Accordingly, a material risk exists that further litigation might yield a smaller recovery, years in the future—or no recovery at all. *See*, *e.g.*, *Hicks v. Stanley*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."). This risk is especially pronounced here, as the Individual Defendants' attorneys' fees and litigation expenses would erode the same insurance policies from which Plaintiff would seek a recovery on behalf of the Settlement Class.

The expense, duration, and difficulties of the Action were it to proceed through discovery, trial, and appeals weigh in favor of final approval of the Settlement.

        **b.**       **The Reaction of the Settlement Class Supports Final Approval**

"It is well-settled that the reaction of the class to a settlement is considered perhaps the most significant factor to be weighed in considering its adequacy." *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007) (internal citations and quotations omitted). "Lack of objection is strong evidence of the settlement's fairness." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 311 (E.D.N.Y. 2006); *see also Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *2 (S.D.N.Y. Nov. 30, 2021) (approving the settlement where there were no objectors and only three requests for exclusion); *In re Revolution Lighting Techs., Inc. Sec. Litig.*, 2020 WL

4596811, at *1 (S.D.N.Y. Aug. 11, 2020) (finding a settlement fair and granting final approval where there were no objections from the class).

To date, no Settlement Class Members have requested exclusion from the Settlement Class or objected to any aspect of the Settlement. Evans Decl. ¶¶13-14; Park Decl. ¶¶112. The absence of objections and exclusion requests supports final approval of the Settlement. Plaintiff's reply papers will address any requests for exclusion or objections received after the date of this filing.

### c.    Plaintiffs and Lead Counsel Were Sufficiently Informed During Settlement Negotiations

Courts also evaluate whether a lead plaintiff and lead counsel were sufficiently informed about the merits of the claims and defenses and the value thereof when they entered into the Settlement. *Bear Stearns*, 909 F. Supp. 2d at 267. The parties need not have engaged in extensive discovery, or any discovery at all, so long as "they have engaged in sufficient investigation of the facts to enable the Court to intelligently make … an appraisal of the settlement." *AOL Time Warner*, 2006 WL 903236, at *10; *see also IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). "Courts have approved settlements at all stages of the proceedings." *AOL Time Warner*, 2006 WL 903236, at *10.

Plaintiffs achieved this Settlement only after litigating the claims through the pleading stage, pursuing discovery, and moving for class certification. Plaintiffs, through Lead Counsel, conducted a thorough investigation of the claims, prepared the Amended Complaint, largely defeated Defendants' motion to dismiss the Amended Complaint, overcome Defendants' motion for reconsideration and/or certification for interlocutory review, pursued discovery from the Individual Defendants, LuxUrban, and numerous third parties, and filed a motion for class

12

certification. Park Decl. ¶¶14-42. In addition, Lead Counsel consulted with experts regarding market efficiency, loss causation, and damages issues. *Id.* ¶7; *see also In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (settlement approved where the parties "have a clear view of the strengths and weaknesses of their cases"). Further, Led Counsel engaged in a thorough mediation process before agreeing to resolve the Action. Park Decl. ¶¶52-54. Therefore, Plaintiffs and Lead Counsel had a thorough understanding of the strengths and weaknesses of their claims, further supporting final approval.

### d.    Plaintiffs Faced Risks to Establishing Liability and Damages

In evaluating fairness, courts consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Courts should not "adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004); *AOL Time Warner*, 2006 WL 903236, at \*11 (same). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459.

"The difficulty of establishing liability is a common risk of securities litigation." *AOL Time Warner*, 2006 WL 903236, at \*11. *See also Christine Asia Co.*, 2019 WL 5257534, at \*10. Here, Defendants vigorously challenged Plaintiffs' theory of liability, arguing that their statements were not materially false or misleading to a reasonable investor. Park Decl. ¶¶82-83. With respect to scienter, Defendants argued, *inter alia*, that Defendant Ferdinand "acquired significantly more shares than he sold during the class period," which is inconsistent with an intent to defraud

13

investors. *Id.* ¶84. The Individual Defendants would surely continue to press these arguments if the Action continued.

The elements of "loss causation" and "damages" also presented very significant obstacles for Plaintiffs. Defendants argued in their motion to dismiss that many of the alleged corrective disclosures did not reveal the falsity of any alleged misstatement and thus did not cause compensable investors. For instance, Defendants argued that the alleged corrective disclosures on March 26, April 15, and May 13, 2024—when the Company made SEC filings that did not include the Trinity, Truss, or James Hotels among its list of properties—were simply consistent with the Company's new policy that it would only announce lease execution for a property once it had begun welcoming guests, and thus did not reveal that any prior statement was false or misleading. *See* Park Decl. ¶89. If the Individual Defendants prevailed on this and similar arguments at a later stage of the Action, it would substantially reduce any possible recovery. As a result, Plaintiffs faced a material risk that the Court or a jury would find that all or a portion of the declines in the price of LuxUrban Securities during the Class Period were not related to Defendants' alleged misstatements, which would reduce or even eliminate classwide damages. Park Decl. ¶¶86-91.

These issues would certainly become fodder for expert testimony, likely leading to an expensive (and always unpredictable) "battle of the experts." Before verdict, neither the parties nor a court can predict which expert's testimony or methodology a jury will adopt, and thus courts recognize the need for compromise. *See generally Doe #1 by Parent #1 v. New York City Dep't of Educ.,* 2018 WL 3637962, at \*11 (E.D.N.Y. July 31, 2018) (finding that the prospect of an expensive battle of the experts supports settlement); *In Re American Bank Note Holographics*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y, 2001) (approving settlement based, in part, on counsel's recognizing that a jury might accept defendants' expert and eliminate or reduce damages

14

materially); *see also In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Accordingly, the material risks of Plaintiffs failing to establish liability, loss causation, and damages could lead to the Settlement Class recovering less than the Settlement Amount or even nothing at all. This strongly favors final approval of the Settlement, which eliminates these risks entirely.

### e.    The Risks of Maintaining Class Action Status Through Trial

The Court has not yet certified the Settlement Class. Thus, there was a risk of the Court denying class certification. Even if the Court certified a class over the Individual Defendants' opposition, the Individual Defendants could later move to decertify the class before trial or on appeal, as class certification "may be altered or amended before the final judgment" under Rule 23(c)(1)(C). *Christine Asia Co.*, 2019 WL 5257534, at *13; *see also Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010). The risks of obtaining and maintaining the class action status support final approval of the Settlement.

### f.    The Settlement Amount is Reasonable in Light of the Best Possible Recovery and Attendant Risks

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a

15

settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

Here, under the best-case scenario—assuming Plaintiffs overcome all the obstacles noted above at and beyond trial, and Defendants do not prevail on any of their current arguments—Plaintiff's expert's estimate of the maximum, potentially recoverable Settlement Class-wide damages is approximately $34.7 million. Park Decl. ¶87. That estimate encompasses all claims asserted in the Amended Complaint, including claims for alleged misstatements concerning LuxUrban's financial results for the first quarter of 2024, which the Court dismissed.

Moreover, this $34.7 million estimate does not account for the effect of non-fraud-related company-specific information that may have been disclosed contemporaneously with the alleged corrective disclosures. Thus, this $34.7 million estimate represents a best-case scenario. Nevertheless, the $3 million Settlement represents a recovery of 8.6% of damages, which is significantly greater than average settlement amounts in securities fraud class actions. *See In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("[T]he average settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses"); *see also* Park Decl., Ex. 6 (Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review* (NERA Jan. 21, 2026) ("NERA Report") at 27 (Fig. 23)) (reporting that, in the past decade, securities class actions with investor losses between $20 million and $49 million settled for an average of 5.2% of losses).

Were Plaintiff to proceed to trial on all claims asserted in the Amended Complaint, Plaintiff would recover the maximum $34.7 million in estimated damages only if: (1) Plaintiff established

Defendants' liability on the alleged misrepresentations and omissions, (2) a jury credited Plaintiff's expert's calculation of the full amount of per-share damages, and (3) every potential Settlement Class Member that Plaintiff's damages expert estimates purchased LuxUrban Securities during the Class Period submitted a valid claim. Should Plaintiff fail to establish liability or the full amount of per share damages, or if significantly fewer Settlement Class Members file claims than Plaintiff's expert estimates, recoverable damages could be materially less than that maximum amount, or none at all. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 414 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.,* 822 F. App'x 40 (2d Cir. 2020) ("Because Plaintiffs face serious challenges to establishing liability, consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery").

In factually and legally complex securities class actions, responsible counsel cannot be certain that they will be able to obtain a judgment at or near the full amount of the class-wide damages that they will seek to prove at trial. The possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992). Money in Settlement Class Members' pockets now is more valuable than a speculative recovery that Settlement Class Members might obtain after a complex trial, undertaking the substantial risk that the Settlement Class may end up with nothing given the challenges that Plaintiff faces in establishing liability and damages. *See In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.").

Moreover, even if Plaintiffs eventually succeeded, their victory could be Pyrrhic in light of the financial condition of Defendants, as litigating through trial could very well exhaust all insurance coverage available to pay the Settlement Class. This weighs strongly in favor of

17

preliminary approval. *See, e.g.*, *Baron v. HyreCar Inc.*, 2024 WL 3504234, at \*8 (C.D. Cal. July 19, 2024) ("[E]ven if Lead Plaintiff could secure a better result than the Proposed Settlement Agreement represents at trial, any result obtained after additional litigation or trial would take significantly longer and there is a risk that Plaintiffs could have received much less, or nothing at all given Defendants' bankruptcy."); *In re Humanigen, Inc. Sec. Litig.*, No. 2:22-CV-05258 (WJM), 2024 WL 4182634, at \*6 (D.N.J. Sept. 13, 2024) ("The fact of Humanigen's bankruptcy underscores the risks that Plaintiffs would face if they tried to secure a substantially higher judgment (i.e., the risk of recovering nothing at all). This factor [] weighs in favor of approving the Settlement.").

In light of the aforementioned material risks that Plaintiff and the Settlement Class might recover less, or nothing, without the Settlement, the Settlement is well within the range of reasonableness. *Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason … why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery"); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (granting final approval which amounted to 2% of potential recovery); *Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423, at \*12–13 (E.D.N.Y. May 22, 1990) (granting final approval amounting to approximately 1.9% of best possible recovery).

For the foregoing reasons, the proposed Settlement is both procedurally and substantively fair, reasonable, and adequate, and in the Settlement Class's best interests. These *Grinnell* factors weigh in favor of granting final approval of the Settlement.

### 3.    The Settlement Satisfies the Remaining Rule 23(e) Factors

The factors set forth in Rule 23(e)(2)(A), (B), and (C)(i-ii) are addressed above. The proposed fee award (to be considered pursuant to Rule 23(e)(2)(C)(iii)) is discussed in the memorandum of law in support of the motion for attorneys' fees and expenses, which demonstrates

that Lead Counsel's request for attorneys' fees in the amount 33% of the Settlement Fund, and reimbursement of expenses, is fair and reasonable.

With respect to identifying agreements pursuant to Rule 23(e)(3)(C)(iv), the Parties have entered into a confidential Supplemental Agreement, as previously disclosed to the Court. Stipulation ¶40. The Supplemental Agreement provides the Individual Defendants with the option to terminate the Settlement if the number of Settlement Class Members requesting exclusion from the Settlement Class exceeds a certain threshold. *Id.* To protect the Settlement Class, the precise terms of the Supplemental Agreement are kept confidential to avoid creating incentives for a small group of Settlement Class Members to opt out solely to leverage larger individual settlements for themselves to the detriment of the rest of the Settlement Class. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co.*, 2019 WL 5257534, at \*15; *see also In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at \*13 (E.D.N.Y. Jan. 21, 2022) (finding that the supplemental agreement does not pose an impediment to final approval). Finally, the Plan of Allocation treats all Settlement Class Members equitably, as discussed below.

In sum, the Settlement is fair, reasonable, and adequate under Rule 23(e)(2) and the *Grinnell* factors, and should be finally approved.

### B.     The Court Should Approve the Plan of Allocation

The Court must also evaluate whether the Settlement treats Settlement Class Members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Plan of Allocation "must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; *see also Christine Asia,*

19

2019 WL 5257534, at 15-16. A fair and rational plan may take into account "the relative strength and values of different categories of claims." *Global Crossing*, 225 F.R.D. at 462; *see also Marsh & McLennan*, 2009 WL 5178546, at *13 (S.D.N.Y. Dec 23, 2009) ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel").

The Plan of Allocation is fair, reasonable, and adequate, and does not treat Plaintiffs or any other Settlement Class Member preferentially. *In re Tremont Sec. Law, State Law & Ins. Litig.*, 2015 WL 5333494, at *6 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part*, 699 F. App'x 8 (2d Cir. 2017).

The Notice sets forth the proposed Plan of Allocation. Evans Decl., Ex. A (Notice and Claim Form) at 12-18. The proposed Plan of Allocation was designed to achieve an equitable and rational distribution of the Net Settlement Fund, but it is not a damages analysis that would be submitted at trial. Park Decl. ¶93. Lead Counsel developed the Plan of Allocation in close consultation with a consulting damages expert and the Claims Administrator, and believe that the Plan of Allocation provides a fair and reasonable method for equitably distributing the Net Settlement Fund among Authorized Claimants. *Id*.

In developing the Plan of Allocation, Plaintiffs' consulting damages expert calculated the estimated amounts by which the price of LuxUrban Securities declined in response to the alleged corrective disclosures. *Id*. ¶94.

Under the Plan of Allocation, a "Recognized Loss" will be calculated for each acquisition of LuxUrban Securities during the Class Period. Evans Decl., Ex. A (Notice and Claim Form) at 12. The Claims Administrator, under Lead Counsel's direction, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's total Recognized Loss compared to the aggregate Recognized Losses of all Authorized Claimants. *Id*.

20

at 12-13. Calculation of Recognized Losses will depend upon several factors, including when the Authorized Claimant purchased LuxUrban Securities during the Class Period, whether the securities were sold and, if so, when. *Id*.

Lead Counsel developed the Plan of Allocation with the Claims Administrator and a damages expert. Park Decl. ¶93. The Plan of Allocation distributes the Net Settlement Fund equitably among Settlement Class Members who were injured by Defendants' alleged misconduct and who submit valid Claim Forms. *Id*. Each eligible Settlement Class Member who submits a valid Proof of Claim form will receive a *pro rata* distribution pursuant to the Plan of Allocation. The Plan of Allocation calculates a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold LuxUrban Securities.

The Settlement will release all claims asserted against Defendants, even those that were dismissed. Stipulation ¶1(ii) (definition of "Released Plaintiffs' Claims"). The alleged corrective disclosures beginning on May 14, 2024, through the end of the Class Period, related to dismissed claims for alleged misstatements concerning LuxUrban's financial statements for the first quarter of 2024. Accordingly, while the Plan of Allocation provides for Recognized Losses arising from those alleged corrective disclosures, it discounts them by 90%, reflecting the fact that those corrective disclosures relate to dismissed claims. Evans Decl., Ex. A (Notice and Claim Form) at 14-15.

The Plan of Allocation closely tracks the form of plans of allocation commonly approved in similar securities class action settlements, and is consistent with Plaintiffs' allegations. In securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at

*5 (D.N.J. Nov. 28, 2007); *see also In re Biolase, Inc. Sec. Litig.*, WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015) (finding a plan that awarded a *pro rata* share of the net settlement fund to be "a fair and reasonable method of distributing settlement proceeds").

If any funds remain after the initial distribution from the Net Settlement Fund to Authorized Claimants, SCS will, at Lead Counsel's direction, conduct a second distribution to Authorized Claimants as long as the second distribution is cost effective. Evans Decl., Ex. A (Notice and Claim Form) at 17. As a result, it is likely that only a small amount of funds will remain in the Net Settlement Fund after such distribution(s). Any residual funds will be distributed to a non-profit charitable organization selected by Lead Counsel and approved by the Court. Stipulation ¶27.

To date, no Settlement Class Member has objected to the Plan of Allocation. Evans Decl. ¶14; Park Decl. ¶112. Accordingly, the Court should approve the proposed Plan of Allocation.

### C.    The Court Should Approve the Notice Disseminated to the Settlement Class as Satisfying the Requirements of Rule 23 and Due Process

The notice program, alerting the Settlement Class to their rights to file a claim or request exclusion, the right to object, and the consequences of any particular choice, complies with this Court's Preliminary Approval Order and satisfies Fed. R. Civ. P. 23(c)(2) and Rule 23(e)(1), the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(7), and due process.

Courts evaluate a notice program's compliance with Rule 23 and due process in terms of its reasonableness. Fed. R. Civ. P. 23(e)(1); *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). Notice is reasonable where it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id.* at 73-74. Notice need not be perfect but only "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through

22

reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) and 23(e)(2)(C)(ii). In its Preliminary Approval Order, the Court approved the notice program and its substance, and approved the retention of SCS as Claims Administrator. Preliminary Approval Order ¶¶7, 8, 9, 11, 12.

The Notice provided to the Settlement Class also provided all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The notice "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Arbuthnot*, 607 F. App'x at 73-74. The Notice gave Settlement Class Members all the information they needed to decide whether to opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. *See* PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely claim forms under the Plan of Allocation as described in the Notice.

Under Lead Counsel's direction, SCS executed the notice program as the Court directed. To date, 4,988 Postcard Notices have been mailed to potential Settlement Class Members. Evans Decl. ¶¶6. In addition, to date, 10,805 emails containing links to the Long Notice and Claim Form have been sent to potential Settlement Class Members. *Id.* ¶7. Thus, a total of 15,793 notices (either via a mailed Postcard Notice or an emailed link to the Long Notice and Claim Form on the Settlement website) have been sent to potential Settlement Class Members. *Id.* ¶8. In addition,

23

SCS published the Court-approved Summary Notice via *GlobeNewswire* and in *Investor's Business Daily*. *Id.* ¶10. SCS also established and maintains a toll-free telephone number for Settlement Class Members to call and obtain information about the Settlement, and published information regarding the Settlement on the Settlement website. *Id.* ¶¶11-12.

In sum, the Notice fairly apprised Settlement Class Members of their rights, was the best notice practicable under the circumstances, and complied with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process.

### D.     The Court Should Certify The Settlement Class

In connection with approving a proposed class action settlement, the Court must determine whether the action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

Rule 23(a) sets four prerequisites to class certification, specifically: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation. The class must also meet one of the three requirements of Rule 23(b). *See* Fed. R. Civ. P. 23. The proposed Settlement Class is defined in the Stipulation as follows: all persons and entities who or that purchased or otherwise acquired LuxUrban Securities between May 9, 2023 and August 20, 2024, both dates inclusive, and were damaged thereby. Stipulation ¶1(mm).

On March 31, 2026, this Court certified the Settlement Class preliminarily for settlement purposes. Preliminary Approval Order ¶¶2-3. No circumstances have changed that would militate against final certification of the Settlement Class for settlement purposes. Thus, the Court should finally certify the Settlement Class for settlement purposes, appoint Lead Plaintiff Ross Marchetta

24

as Class Representative for the Settlement Class, and approve his selection of Pomerantz LLP as Class Counsel for the Settlement Class.

## IV.    CONCLUSION

For the forgoing reasons, the Court should grant final approval of the proposed Settlement and Plan of Allocation, approve the notice program as executed, and enter final judgment. With their reply papers in support of this motion, Plaintiffs will submit a proposed Final Order and Judgment (in the form previously filed as Exhibit B to the Stipulation) to reflect any valid requests for exclusion from the Settlement Class.

DATED: August 4, 2026

Respectfully submitted,

*/s/ Jonathan D. Park*

**POMERANTZ LLP**
Jeremy A. Lieberman
Jonathan D. Park
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
jpark@pomlaw.com

*Counsel for Lead Plaintiff Ross Marchetta and
Lead Counsel for the Class*

**PORTNOY LAW FIRM**
Lesley F. Portnoy
1100 Glendon Ave, 14th Floor
Los Angeles, California 90024
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Lead Plaintiff Ross
Marchetta*

26

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1(c)

The undersigned certificates that this memorandum of law contains 7,658 words and complies with the word-count limitations set forth in Local Civil Rule 7.1(c).

*/s/ Jonathan D. Park*
Jonathan D. Park